101 So.2d 214

Elton T. WILSON, Sr.

v.

Mrs. Edgar LEVY (Formerly Mrs. D. W. Dawkins).

No. 43276.

March 17, 1958.

Meadors, Shaw & Meadors, Homer, for plaintiff and appellant.

Campbell & Campbell, Minden, for defendant-appellee.

FOURNET, Chief Justice.

The plaintiff, Elton T. Wilson, Sr., instituted this petitory action against the defendant, Mrs. Edgar Levy (formerly Mrs. D. W. Dawkins), to obtain physical possession of a tract measuring 30 and ⁹/₁₀ acres, which, according to the description, is included in the 330 acres in Claiborne Parish which the plaintiff purchased from Mrs. Levy by authentic act dated October 3, 1947. Coupled with the action is a demand for damages in the amount of $1,200 for the vendor's failure to deliver possession of the tract. The defendant, admitting the execution of the deed, averred she neither intended to sell, nor did the plaintiff intend to buy, the property in controversy; that its inclusion in the description in the deed by which the 330 acre tract was conveyed to the plaintiff was a mutual error, mistake, or inadvertence. By way of reconvention the defendant asked that the deed be reformed to exclude the disputed acreage. From a judgment in accordance with this prayer the plaintiff prosecutes this appeal.

As pointed out by this court in Reynaud v. Bullock, 195 La. 86, 196 So. 29, 34, on rehearing, "It is an established rule of law in our jurisprudence that 'Either party is always permitted, in a suit between the parties to a contract, to correct any error in the instrument purporting to evidence the contract, so as to make it express truly and correctly the intention of the parties,' * * * provided the rights of third parties have not intervened. * * * The error or mistake must be mutual. * * * The burden is on the one seeking the reformation to prove the error * * * and he must carry the burden by clear, and the strongest possible, proof."

Plaintiff's attorneys concede, as they must, that this a correct statement of the law. They contend, however, that inasmuch as Wilson acquired the property in controversy by authentic act, which, under Article 2236 of the Revised Civil Code, makes full proof of the agreement contained in it, a prima facie case was thus established in his favor, and the trial judge, failing to take this presumption into consideration in weighing the evidence, committed reversible error in concluding the defendant had established mutual mistake by clear and convincing proof.

Our appreciation of the case after a careful study of the evidence establishes unquestionably that the trial judge, as reflected by his well considered opinion, not only gave full recognition to the provisions of Article 2236, as well as all other pertinent rules of law, but, carefully and pains-

takingly analyzing the evidence, correctly concluded the defendant fully discharged her burden of establishing the land was included in the description of the property actually sold by the defendant through mutual error, and, accordingly, properly ordered the deed reformed.

The record discloses this entire acreage was formerly owned by W. J. McCleish. On January 7, 1921, he and his wife sold to the defendant, his daughter, then married to D. W. Dawkins, some 30 acres carved from the original tract,[1] it being that part of the property lying to the north of the old Athens-Gibsland road.[2] The defendant immediately took possession of the property thus purchased and her father and mother continued to occupy the portion of the tract not conveyed. From that time

the two tracts became known locally as the Dawkins place and the McCleish place respectively. The defendant acquired the acreage south of the road known as the McCleish place in 1941 when she purchased it at the sheriff's sale initiated by her in foreclosing on the second mortgage she acquired on the property in July of 1933, after the death of her husband.[3]

In 1947, having determined to sell the McCleish place, the defendant listed the property with a local real estate agent named Ellis J. Smith, who was thoroughly familiar with all of the property in the vicinity and fully understood what he was contracting to sell. This listing culminated in the transfer of the property to the plaintiff by authentic act of October 3, 1947, under the same erroneous description the de-

1. The McCleish property was located in proximity to the Village of Athens, and the tract sold defendant was described in its relation to that town, without indication of section, ownship, or range, thus: "Commencing at the Mattie Van Hooser lot on West side of Cobb Street, thence West 80 yards; thence North 82 yards; thence West 376 yards; thence South 434 yards; thence East 407 yards; thence North 319 yards to point of commencement, in all 34 acres, more or less." It is apparent that this indefinite description, coupled with the fact that there was a slight error in the listing of the name in the index books of the Conveyance Records of the parish (as explained by the clerk of court), was responsible for the fact that in several subsequent transactions the acreage was described as though Mr. McCleish still own-

ed the whole, and the deed was omitted from certain abstracts of title covering the W. J. McCleish lands.

2. According to a sketch furnished the court, the old road ran along the left side of the large tract of land, cut across to the right on a slightly diagonal line, then continued in a northerly direction along the right side.

3. The description of the property thus mortgaged, without the knowledge of the defendant, inadvertently included the smaller tract here in dispute, which had been purchased by the defendant in 1921, as did also the first mortgage McCleish gave the Federal Land Bank covering the McCleish place in May of 1924. Of necessity, therefore, the deed under which the sheriff conveyed the property to the defendant followed the erroneous description contained in the mortgages.

fendant acquired the property at the sheriff's sale in 1941. Following execution of this deed the defendant never relinquished the corporeal possession of the Dawkins place. Instead, she moved her furniture from the residence on the McCleish place and stored it in a house across the highway on the Dawkins place, and she has continued to occupy and possess this tract through tenants ever since. She did, however, surrender the corporeal possession of the property on the southern side of the road to the plaintiff, who immediately moved onto the premises and has continued to stay there, exerting ownership and possession of only this tract until in 1954, through the means of a survey he caused to be made, it was discovered the Dawkins place was included in the description under which he purchased the McCleish place.

The defendant testified most positively that she intended to sell only the McCleish place, that she listed only the McCleish place for sale with the real estate brokers, and that he not only understood the listing did not cover the Dawkins place under the contract thus entered into, but also because she turned down flatly his specific request that it be included. She further testified that the plaintiff was himself well aware the Dawkins place was not to be included in the sale for, in the presence of the real estate agent prior to the sale she told him, upon inquiry, that she not only did not intend to sell it but could not, inasmuch as it was owned by her in indivision with her children who had inherited her husband's half of this community property upon his death some time prior thereto. She is fully corroborated in all of these respects by Smith, and in all material aspects by the plaintiff, for he admits the conversation and its substance, denying only that it occurred prior to the sale and in the presence of Smith, which denials, in the light of his actions subsequent to the sale itself, are unimpressive. She is further corroborated by the fact that following the sale she not only continued to possess the property and farm it through a tenant under the very eyes of the plaintiff, who offered no protest, but that from 1921 to date she has been separately assessed with the taxes on the Dawkins place and has paid them all the years since that time, even after the sale of the McCleish place to the plaintiff.

The defendant further testified that prior to the sale to the plaintiff he called upon her and asked that she point out the lines or boundaries of the property he was to purchase; that she gladly pointed out the north line (which was the old road and apparently more or less obliterated by that time, although it was under fence), and also the back line, but did not go out into the field with him because she was not feeling well, sending him, instead, to tenants living on the property who showed him the

remaining lines. This is not denied by the plaintiff. In fact, he admitted he went out to the property and walked all over it, and was showed the lines. His contention is that he did not at that time, prior to the sale, "definitely establish all the lines on the property." His testimony differs only in the respect that the defendant did not point out to him the north line of the property until after the sale. This testimony does not impress us, for it is inconceivable that a man, contemplating the purchase of a large tract of land and interested enough to go out and walk all over the place and have the lines pointed out to him would have been satisfied to have three of the boundaries pointed out to him and not the fourth, and all the more particularly when the fourth boundary was not only the closest, but actually right in front of the house where the defendant was then living and was the dividing line between the two places. Furthermore, his actions following the purchase in settling on the McCleish place show that he considered the old road as fenced to be the northern boundary of his property.

It is obvious, therefore, that none of the parties (the plaintiff, the defendant, or the real estate agent) knew at the time the McCleish property was purchased in 1947 that the Dawkins place was contained in the description of the land he was acquiring. He bought a specific tract of land from the defendant, the boundaries of which were not only pointed out to him but around which he walked. It is also obvious —and in fact the evidence overwhelmingly preponderates to the effect that—he was fully informed by the defendant prior to the sale she could not sell him the Dawkins place because this was not her property but was owned by her in indivision with her children. During the seven years following his purchase he continued to live side by side with the Dawkins property, permitting Mrs. Levy (formerly Mrs. Dawkins) to remain in possession of it and to farm it without protest, until in 1954 the survey he caused to be made of his property disclosed the erroneous inclusion therein of the Dawkins place.

We fail to appreciate how plaintiff's cause can be benefited by counsels' argument that McCleish did not intend by the deed of January 7, 1921, to convey the Dawkins place to the defendant, as evidenced by a number of instruments executed subsequent thereto by McCleish under description that included both places. The only relevancy this could have on the case would be to throw some light on the manner in which the error in description that gave rise to this litigation occurred. It certainly could have no effect on the only issue in the case, i. e., whether at the time of the execution of the act of sale in 1947 the

acreage here in dispute was included in the description of the property conveyed through mutual error on the part of the parties to the act.

 Counsels' further argument that the deed of January 7, 1921, was erroneously admitted in evidence over their objection because the record contains no evidence to show the location of the property therein described and it was not correctly indexed in the conveyance records, is untenable. It was established beyond peradventure that while the description does lack the desired certainty, this same description under which the property was conveyed in 1921 consistently appeared on the assessment rolls of Claiborne Parish where the property was listed as "situated in the Town of Athens." As such the defendant was assessed and paid taxes on the property regularly, and she has possessed this segment of land north of the old highway and farmed it through tenants from that time to the present—a period of more than 30 years. It was, additionally, properly indexed in the conveyance records of the parish. The only irregularity is that Mr. McCleish's initials were there shown as W. G. instead of W. J., on the original index (in long hand) as well as on the W.P.A. copy thereof.

For the reasons assigned the judgment appealed from is affirmed.

101 So.2d 218