REDMANN, Judge.
In 1942 plaintiffs Mr. and Mrs. Lawrence J. Prejeant entered into a contract, claimed to be a bond for deed, to purchase from defendant Hero Lands Company an 11-acre tract of land. Plaintiffs now appeal from a judgment dismissing their suit to reform a 1955 act of sale to delete an exclusion of 3.67 acres of the tract.
The principal defense is that the 1955 sale was a compromise, the Prejeants having been in default on their 1942 contract payment obligations.
Independent Towing Company, Inc., which had purchased the land (by description containing the exclusion) from the Prejeants, is also a plaintiff. Their interest is only to have the Prejeants’ title to the property established, and by “plaintiffs” hereinafter we refer exclusively to the Prejeants.
By the 1942 contract defendant agreed “to sell on a rental contract basis” “and hereby rents” to plaintiffs “on a month to month basis at $7.50 per month,” the approximately 11-acre tract. Defendant agreed to give plaintiffs title to the property “as soon as rents paid on account of the same amount to the full sum of $1,000, plus interest at the rate of 6% per annum on the above amount from this date,” plus taxes and other advances. The contract further recited:
“Time is the essence of this contract; this rental contract shall remain in force as long as the regular monthly payments are made promptly each month, as provided for herein; and in the event that any monthly payment hereunder shall remain past due for the period of one (1) month from and after its due date, then this contract and right of purchase of said land under the terms of this contract and agreement shall become null and void, ipso facto, between the parties hereto, without giving or sending any notice of default, and without any necessity whatever of formally putting in default.”
La.Acts 1934, No. 169, § 7, [source of R.S. 9:2941 (1950).] defined a bond for deed as “a contract to sell real property, in which the purchase price is to be paid to the vendor in installment payments by the purchaser, for his convenience, and in which the vendor after final payment of the agreed price, covenants and agrees to deliver to the purchaser a deed and title to the property purchased.”
The 1942 contract was a bond for deed.
It could not have been cancelled by defendant, in spite of its last-quoted language of nullity on default of one month, except by compliance with Acts 1934, No. 169, § 4 (now R.S. 9:2945). That section required registry of the cancellation in the conveyance office, after first serving notice on the purchaser by registered mail that unless the required payments were made within 45 days the bond for deed would be can-celled. Leinhardt v. Marrero Land & Impr. Ass’n, Ltd., 137 So.2d 387 (La.App.1962).
Although plaintiffs were often and considerably in arrears, defendant never effected a cancellation. Not even an attempt to cancel is shown.
While the agreement therefore remained in force, the United States in 1952 initiated expropriation of a 1000-acre servitude to construct the Intracoastal Canal. One parcel of land required was 3.67 acres of *615 the 11-acre tract, to which title was in defendant subject to plaintiffs’ bond for deed. In connection with the expropriation, defendant on March 15, 1954 adopted a resolution reciting its ownership and plaintiffs’ contract to purchase, and that “Prejeant, prospective purchaser” was “desirous of settling the controversy with the United States Government over the above described property for $500.00 cash and wishes to sell and transfer the above described property, or the rights therein, to the United States for said price; and Whereas such action and price are agreeable to this company” and Prejeant wanted the price to be paid to defendant “to further and facilitate the final execution of said purchase contract” (emphasis added). The resolution authorized the granting of the servitude by defendant to the United States.
On August 10, 1954, a stipulation in the pending expropriation suit was made between the United States and the “defendants” the Prejeants and Hero Lands Company, that the United States should have the desired servitude for $500.00 as just compensation. There are expressions in that stipulation which are suggestive of compromise. There our plaintiffs and defendant “have amicably agreed that the beneficial interest” of plaintiffs was $500, and that the Court was authorized to decree disbursement of $500 to our plaintiffs “in full satisfaction of their beneficial interest”. But we believe that language must be understood as settling the dispute between the United States and parties in interest in the land. Defendant’s resolution of March 15, 1954 shows there was no dispute of any kind between plaintiffs and defendant.
The payment to defendant of the net proceeds of the $500 expropriation compensation brought plaintiffs ahead of the 1942 contract schedule on payment. By the time the 1955 act of sale was passed, plaintiffs had paid off their debt in advance of contract schedule.
Under the 1942 contract, plaintiffs were therefore entitled to the entire 11-acre tract, although subject to the expropriated servitude over the 3.67-acre portion.
Yet the 1955 act of sale described the property sold as the 11-acre tract,
“SAVE AND EXCEPT THEREFROM and subject to any rights which have been or may be acquired by the United States Government by virtue of or because of condemnation proceedings presently pending in the U. S. District Court for the Eastern District of Louisiana entitled ‘United States of America vs 1000 Acres of Land, more or less, in Plaque-mines Parish, Louisiana’ No. 3362, Civil, in which the above described property is involved.
“SAVE AND EXCEPT PARTICULARLY THEREFROM the following described property over which a perpetual easement and servitude was acquired by the U. S. Government in the above proceedings, to-wit:
“A certain tract of land lying and being in the Parish of Plaquemines, Louisiana, in Section 93, Township 14 South, Range 24 East, and being all that rear portion of Lot R of the Concord Canal Subdivision (Bayou Barataría Section) lying within the channel right of way limits of the Concord Canal Subdivision and contains an area of 3.67 acres, more or less, and is bounded northerly by land of Frank Spano, east by land of Angelo Casio, southerly by Railroad Canal, and Westerly by other land of Lawrence J. Prejeant and L. B. Hayes, and is more particularly shown on a map prepared by the Corps of Engineers, U. S. Army, New Orleans District, dated January 1946.”
However, the Act also recited
“THIS SALE IS MADE AND ACCEPTED, for and in consideration of the price and sum of one thousand and no/100 ($1,000.00) dollars, as per rental contract July 1st, 1942 * *
Thus the act appears to be in error, either in the exclusion of part of the land *616 covered by the earlier contract or in reciting that the sale is made “as per” the earlier contract. If, as defendant claims, the exclusion was the result of a compromise, the act would more appropriately have recited “in compromise of” rather than “as per” the earlier contract.
Defendant’s theory of compromise is that the earlier contract had, by its terms, become null by default in payments. As a matter of law, as above noted, this could not occur (now R.S. 9:2945). Yet an error of law cannot annul a compromise; C.C. art. 3078. (But query, whether R.S. 9 :- 2945’s restriction against cancelling in full may not also prohibit cancelling in part?)
A compromise must be in writing, C.C. art. 3071. Defendant asserts the written 1955 act itself satisfies the requirement. We have considerable doubt that a writing which itself does not purport to settle differences satisfies the writing requirement; see arts. 3071, 3075 and 3083. There is no sacramental language; Calhoun v. Lane, 39 La.Ann. 594, 2 So. 219 (1887); Antoine v. Smith, 40 La.Ann. 560, 4 So. 321 (1888); but even those cases involved agreements which expressly involved relinquishments of claims. Here, there is no language in the act of sale incompatible with the exclusion being a mere error; it appears especially objectionable to claim as a written compromise exactly the error alleged. Because compromise constitutes res judicata, C.C. art. 3078, this kind of argument would defeat every suit to reform a written contract to correct error, since it could always be said that the alleged error was a compromise. What must, and did here, happen is that parol evidence has to be received to determine whether a compromise was had. This defeats the purpose of compromise, which is to avoid litigation. Nevertheless, we have considered the parol evidence and conclude it establishes error rather than compromise as the explanation of the 1955 act’s exclusion.
At the time of the 1952 expropriation plaintiffs were represented by counsel who also acted as notary in the 1955 act of sale. That attorney did not testify, but his files were introduced into evidence and it was stipulated he had no independent recollection of the matter.
The attorney’s file contains mortgage certificates dated 1954 (presumably used in settling the expropriation suit), one in plaintiffs’ and one in defendant’s name. The 11-acre tract is described, and the clerk of court stated as an exception the lis pendens notice of the United States.
The file also contains the mortgage certificate obtained at the time of the 1955 sale, and evidence that this certificate was prepared by plaintiffs’ attorney and sent by him to the Clerk of Court. This certificate, first dated by the clerk September 23, 1955, describes the 11-acre tract,
“LESS AND EXCEPT THEREFROM:” the 3.67 acre portion,
“This being the portion taken by the U. S. Government for channel right of way.” (Emphasis added.)
Also in the file is the attorney’s “work sheet”, containing instructions apparently to his secretary for typing the act of sale. Among other particulars, this sheet at the blanks for price and terms has handwritten “as per rental contract #-.” Then it contains, also handwritten,
“*NOTE — Describe property in contract — less and except portion sold to U. S. Govt. — ” (Emphasis his.)
There is nothing in the attorney’s file which is, to us, the least suggestive of any compromise. It appears to us that the error arose from the mistaken notation that the 3.67 acre portion had been “sold” to the United States rather than subjected to a servitude.
Still, the actual language of the act of sale excepts the “property over which” the servitude was acquired by the United States, and describes that property by the *617 description the United States used in the expropriation suit. (That description, interestingly, apparently refers to the 3.67 acres as already belonging to the Prejeants, reciting its western boundary as “other land of Lawrence J. Prejeant.”)
Yet it appears to us a plausible construction of the intent of the two exceptions (quoted in full at the beginning of this opinion) is that the first excepted whatever rights were or might be acquired by the United States expropriation proceeding, and the second merely particularized the rights acquired “in the above proceedings.” Clearly, if the entire 3.67 acre portion was to be excluded in fee by the second exception, there was no point whatever in excluding the United States’ rights over that portion in the first exception.
Nevertheless the words of the description’s exclusion are “property over which” the “servitude was acquired”.
The only evidence of a compromise was the testimony of Numa C. Hero, secretary-treasurer of defendant. He stated that, when plaintiffs were in default in the contract payments, their attorney “agreed to a new agreement where Prejeant would give to Hero Lands Company or would give up the claim to that property in the navigation canal, and we would give to them the remaining of the property instead of can-celling the contract.” (We pretermit questions of the form of a mandate to compromise, required to be “express and special” under C.C. art. 2997, and probably in writing, art. 2992, because relating to a recorded contract relative to immovable property.)
Asked whether he had made a new agreement to exclude the subject portion, the witness answered
“It is evident that was made because [their attorney] drew up the Act of Sale showing that exclusion.”
And again, asked when the agreement with the attorney was made, he replied “Prior to the drawing of the Act of Sale. It had to be.”
Hero did not remember who was present at the making of the new agreement, but he dealt with their attorney, “an honorable. man that makes a decision after consulting with his clients.”
Again Hero testified that the fact plaintiffs’ attorney “drew up the Act the way he did shows there was a compromise of some kind made or he wouldn’t have drawn it.” There followed this testimony (all under a proffer under C.C.P. art. 1636):
“Q. Are you speaking particularly of any recollection about this agreement, or are you surmising from the wording of the Act of Sale of 1955 ? That is what I want to find out?
“A. My idea of business is when I get an Act of Sale that is signed by all parties, the contract is completed. That is the end of it. I would have to go through God knows how many files to find out what you’re asking, and I wouldn’t think there is any need for it in view of the fact that there was a bona fide Act passed before a Notary of Honor.
“Q. And you have no recollection of any agreement as between you and Mr. and Mrs. Prejeant?
“A. I haven’t any recollection of what was done prior. I know this, that I had meetings with Fred Bowes and talked to him. I know that I saw Mr. Prejeant or Mrs. Prejeant on different occasions. What transpired, I don’t know. That is years ago.”
We believe it manifest that Hero had virtually no independent recollection of the transaction with plaintiffs, so many years prior to trial. His corporation had considerable land transactions, and his recollection of some kind of compromise discussions with plaintiffs’ attorney may have related to another client of that attorney or even of another attorney.
*618 We believe defendant’s actual position is shown by the contemporaneous written record of defendant, namely the 1952 corporate resolution “to further and facilitate the final execution of said purchase contract.”
We reiterate our doubt that parol should ever be admitted to show that an alleged error in writing was in fact a compromise, but we hold that the evidence here does not support the trial judge’s conclusion of compromise in any case. The 1955 act’s exclusion of the 3.67 acre portion was the result of error, not compromise, and the act must be reformed to correct the error.
We note defendant’s argument that reformation can only be had in case of mutual error, and that defendant shows it was not under any error. This argument ignores the paradoxical truism that every defendant in a case alleging mutual error denies the error; otherwise he would have consented to an extrajudicial act of correction and there would have been no lawsuit. Unilateral error would at best void a contract, for lack of meeting of minds; it could never reform a contract. A contract is reformed only when the evidence shows that the parties did mutually agree to a bargain erroneously recorded in the written contract.
There can be no dispute that in 1942 the parties did mutually agree to sale of the 11-acre tract for $1,000. As a matter of law, that contract did not become null for default in payments. As a matter of fact, defendant corporation sought its “final execution” by agreeing to the amount of compensation from the United States for a servitude over it, and thereafter plaintiffs were never again in default in payments. Except for defendant’s rejected compromise theory, nothing could be plainer than that the 1955 Act “as per rental contract July 1st, 1942” did not reflect the mutual agreement of the parties, did not reflect the then true intent of either party.
The law respecting reformation of instruments is reviewed by our Supreme Court in Agurs v. Holt, 232 La. 1026, 95 So.2d 644 (1957), which in fact ordered reformation of a deed, where the evidence “clearly and convincingly” sustained plaintiff’s contention of error and the “defense evidence does not rebut the strong case made by plaintiff.”
Although the facts of the cases are not identical, we find here that plaintiffs’ clear and convincing case of error is not rebutted by defendant’s unsatisfactory evidence of compromise.
Accordingly the judgment appealed from is reversed, and it is now ordered, adjudged and decreed that the Act of Sale of November 14, 1955, by Hero Lands Company to Alverta Barrilleaux, wife of, and Lawrence J. Prejeant, registered in Conveyance Office Book 186, folio 849, Plaquemines Parish, is reformed so that the description of the land thereby conveyed shall read as follows:
“A CERTAIN PIECE OR PORTION OF GROUND, together with all the buildings and improvements thereon, all rights, ways, privileges, servitudes, appurtenances and advantages thereunto belonging or in anywise appertaining, situated in the Parish of Plaquemines, State of Louisiana, containing approximately eleven (11) acres of land, more or less, Bayou Barataría Section — Concord Canal Subdivision, being Plot No. -r- and measures One hundred thirty (130') feet, more or less, front on Concord Canal road or highway, adjoining the property of Frank Spano on its northeasterly side, along which said property line of Frank Spano it extends from said Concord Highway to the westerly property line of Plot 1 of Bayou Baratatia Section Concord Canal Subdivision, thence along a line drawn at right angles to the Augusta Canal and Road right of way from the point of intersection on the southwesterly line of the property of Frank Spano with northwesterly line of Plot *619 No. 1 of said Bayou Baratariá Section— Concord Canal Subdivision to a point Six hundred (600') feet from Augusta Canal and road right of way, thence in a straight line to a point One hundred (130') feet along Concord Canal Highway or road from the westerly line of the property of Maimie Hertzog, or John Karst, thence a distance of One hundred thirty (130') feet, more or less along the right of way of Concord Canal Road or Highway to the point of beginning. Being part of Concession Plantation, in T 14S-R24E West of the Mississippi River in Plaquemines Parish, Louisiana. Which said Plot -r- is being sold herein-under according to metes and bounds only, regardless of the actual number of acres of land it might contain, the parties hereto taking cognizance of the fact that no actual survey of said plot has been made.
“SAVE AND EXCEPT THEREFROM and subject to any rights which have been or may be acquired by the United States Government by virtue of or because of condemnation proceedings presently pending in the U. S. District Court for the Eastern District of Louisiana entitled ‘United States of America v 100 Acres of land, more or less, in Plaquemines Parish, Louisiana’ No. 3362, Civil, in which the above described property is involved.
“SAVE AND EXCEPT PARTICULARLY THEREFROM the perpetual easement and servitude acquired by the United States Government in the above proceedings over the following described property, to-wit:
“A certain tract of land lying and being in the Parish of Plaquemines, Louisiana, in Section 93, Township 14 South, Range 24 East, and being all that rear portion of Lot R of the Concord Canal Subdivision (Bayou Barataria Section) lying within the channel right of way limits of the Concord Canal Subdivision and contains an area of 3.67 acres, more
or less, and is bounded northerly by land of Frank Spano, east by land of Angelo Casio, southerly by Railroad Canal, and westerly by other land of Lawrence J. Prejeant and L. B. Hayes, and is more particularly shown on a map prepared by the Corps of Engineers, U. S. Army, New Orleans District, dated January 1946.
“All boundaries given above are now or formerly.
“Being a part of the same property acquired by Hero Lands Company by act of merger with Hero Lands, Inc., dated June 16, 1950, acknowledged before G. J. Gallinghouse, Notary Public in and for Orleans Parish, registered C.O.B. 145, folio 473, Parish of Plaquemines, Louisiana.
“Less minerals and mineral rights which are herewith specifically reserved and the same are not sold or transferred with the property hereinabove conveyed.”
There is further judgment in favor of plaintiffs Mr. and Mrs. Prejeant, and against defendant, for all costs of these proceedings.
Reversed and rendered.