SCHOTT, Judge.
Defendants, Mack C. Whittington, Harry S. Kaufman Jr. and W. Richard White, have appealed from a judgment ordering the reformation of an act of sale dated July 5, 1966, before William J. White, Notary Public, in which plaintiffs sold their interest in a large 6400 acre tract of land located in Jefferson and Plaquemines Parishes to defendants. The issue is whether the parties to that act by mutual error or mistake included a naked ownership of an interest which was equivalent to 33 acres.
The 6400 acres were owned by Rojas-Adams Corporation until 19S2 when the corporation was liquidated. In connection therewith Mrs. Collins received a 4.16 per cent interest in the.land in exchange for her interest in the corporation, and her mother also received a percentage interest. In 1958 Mrs. Collins inherited a fractional interest of her mother’s percentage interest and shortly thereafter she acquired an additional .537 per cent of ownership in the 6400 acres, subject to a usufruct in favor of Varice Curol in an act of compromise or partition before Nathan Greenberg, Notary Public dated April 16, 1958. In the meantime, on May 28, 1952, Mrs. Collins sold an undivided half interest in the 4.16 pgr cent she acquired from the corporation to defendant White and others, and in December, 1959, Mr. and Mrs. Collins sold an undivided one-half interest in the percentage of ownership she inherited from her mother to defendants Whittington and White and another party. For clarity these percentages of ownership acquired and conveyed by plaintiffs are best expressed in acres and were equivalent to 255 acres acquired in 1952 and 162 acres in 1958 and to 128 acres conveyed in 1952 and 81 acres conveyed in 1959 with the result that they had 208 acres in full ownership. In addition, they had the naked ownership of a 33 acre equivalent acquired in the April 16, 1958, act of compromise.
On April 11, 1963, plaintiffs borrowed $12,000 from defendant W. Richard White and others and on October 16, 1964, plaintiffs borrowed $15,000 from W. Richard White and others, with both loans secured by mortgages. In both acts the real estate descriptions are identical in that they describe the entire 6400 acres less and except certain portions transferred to members of the Rojas family other than Mrs. Collins, but the descriptions differ with respect to the acquisitions. The earlier mortgage in this respect reads as follows:
“Being the same property acquired by Mildred Rojas Collins from Rojas-Adam Corporation of Delaware by act before Severn T. Darden, Notary Public, dated April 21st, 1952 and registered in C. O. B. 319, Folio 364, Jefferson Parish, Louisiana and registered in C. O. B. 161, Folio 174, Plaquemines Parish. Louisiana.
*849 “LESS AND EXCEPT: An undivided one-half of an undivided 4.16% interest conveyed to W. R. White et al by act before Fred S. Bowes, Notary Public, dated May 28th 1952, registered in C. O. B. 321, Folio 424, of the records of the Parish of Jefferson and C. O. B. Folio of the records of Plaquemines Parish.”
The latter mortgage contains the following:
“Being the same property acquired by Mildred Rojas Collins from Rojas-Adam Corporation of Delaware by act before Severn T. Darden, Notary Public, dated April 21st, 1952 and registered in C. O. B. 319, Folio 364, Jefferson Parish, Louisiana and registered in C.O.B. 161, Folio 174, Plaquemines Parish, Louisiana.
“Being the same property acquired- by Mildred Rojas, wife of Eddie Collins, by judgment of possession in the Succession of Lithia Lena Brown Rojas Curol, bearing Docket No. 45-326 of the Twenty-Fourth Judicial District Court for the Parish of Jefferson, registered in C.O.B. 445, folio 520, Entry No. 121097, and being farther acquired by act of compromise passed before Nathan Greenberg, Notary Public, dated April 16, 1958, registered in C.O.B. 145, folio 523, bearing Entry No. 121098, Jefferson Parish, Lotiisiana, and in Plaquemines Parish said judgment is recorded in C.O.B. 205, Folio 1251, and said act of compromise is recorded in C.O.B. 206, folio ll.[1]
“LESS AND EXCEPT: As undivided one-half of an undivided 4.16% interest conveyed to W. R. White et al by act before Fred S. Bowes, Notary Public, dated May 28th, 1952, registered in C.O.B. 321, Folio 424, of the records of the Parish of Jefferson and C.O.B. Folio of the records of Plaquemines Parish.
“ALSO LESS AND EXCEPT: Sale of one-half interest by Mortgagors to Mack G. Whittington, et al, by act passed before W. J. White, Notary Public, dated December 16, 1959, registered in C.O.B. 495, folio 591, Jefferson Parish, Louisiana.
“This mortgage also includes and covers all of the undivided right, title and interest belonging to mortgagor in the above described property, including that interest of which Verice Curol has the usu-fruct in accordance with agreement and compromise executed before Nathan Greenberg, Notary Public, dated April 16, 1958, and registered C.O.B. 445, folio 523, Jefferson Parish, Louisiana, or any other document creating said usu-fruct.”
The description of the property sold by plaintiffs to defendants in the act of sale on July 5, 1966, which is the subject of the judgment of reformation, is identical to the description in the later mortgage quoted above except that the paragraph beginning “LESS AND EXCEPT” is omitted, the paragraph beginning “ALSO LESS AND EXCEPT” is included with the beginning “LESS AND EXCEPT” and significantly the final paragraph making specific reference to the undivided interest subject to the usufruct is omitted. Nevertheless, the part of the acquisition in the later mortgage and given emphasis above was included in the sale and provided the basis for ostensible inclusion of the 33 acre equivalent which the trial court’s judgment of reformation would exclude.
At the outset it must be understood that plaintiffs sued for and were awarded a judgment reforming the sale. Their case is not based upon allegations or proof of fraud but rather on the theory that both parties to the sale, plaintiffs on the one hand and defendants on the other, intended to exclude the 33 acre interest and its inclusion resulted from mutual error or mistake.
*850 Our jurisprudence is replete with decisions on the law respecting reformation of instruments. For instance in Agurs v. Holt, 232 La. 1026, 95 So.2d 644, it is said that reformation “is an equitable remedy and lies only to correct mistakes or errors in written instruments when such instruments, as written, do not express the true contract of the parties.” In Wilson v. Levy, 234 La. 719, 101 So.2d 214, the court, quoting Reynaud v. Bullock, 195 La. 86, 196 So. 29, said that “Either party is always permitted, in a suit between the parties to a contract, to correct any error in the instrument . . . so as to make it express . the intention of the parties”.
As in all cases the plaintiff, in a suit for reformation, has the burden of proof but this burden has been said to require “clear and convincing proof” or evidence which is “strong and convincing,” Agurs v. Holt, supra. It has even been said that “the strongest possible” proof is required for plaintiff to prevail. Wilson v. Levy, supra, Reynaud v. Bullock, supra.
When these standards are applied to the proof offered to support plaintiffs’ case we are led to conclude that plaintiffs’ proof fell short with the result that the judgment of the trial court is reversed.
After considering the evidence which consisted of the written documents and the testimony of plaintiffs, the three defendants and the notary public, William John White, who passed the later mortgage as well as the act of sale, the trial judge set forth the following reasons for judgment:
“Plaintiffs contend that the act of sale of July 5, 1966, should be reformed to delete therefrom the 33 acres subject to the usufruct. The testimony clearly discloses the lack of education of the plaintiffs and the inability of plaintiff Eddie Collins to multiply. However, plaintiff, Eddie Collins, knew that he and his wife were to sell 208 acres at $160.00 per acre. Although Mr. Collins did not testify as to the total amount of the purchase price because he admittedly could not multiply, he did know the terms of the transaction as the terms related to the price per acre.
“On the other hand, defendant, W. R. White, who apparently was the only defendant with actual contact with the plaintiffs at first contended that there was no agreement as to a certain number of acres at a stipulated price. Thereafter, he admitted that the property in question was normally sold on a basis of acres, and that the sale of 208 acres at $160.00 per acre would yield the amount of the selling price set forth in the sale of July 5, 1966, namely, $33,280.00. If defendants were to purchase 208 acres only at the agreed price of $160.00 per acre, then it is clear that the 33 acres in usu-fruct should not have been included within the sale in question.
“In the recent case of Prejeant v. Hero Lands Company, 244 So.2d 613 (La.App. 1971) the Fourth Circuit Court of Appeals held:
‘We note defendant’s argument that reformation can only be had in case of mutual error, and that defendant shows it was not under any error. This argument ignores the paradoxical truism that every defendant in a case alleging mutual error denies the error; otherwise he would have consented to an extrajudicial act of correction and there would have been no lawsuit. Unilateral error would at best void a contract, for lack of meeting of minds; it could never reform a contract. A contract is reformed only when the evidence shows that the parties did mutually agree to a bargain erroneously recorded in the written contract.’
“The evidence presented to the Court shows that the parties did mutually agree to a bargain erroneously recorded in the Act of Sale of July 5, 1966.”
As to plaintiffs’ unilateral error we have no problem. The trial judge’s belief of their testimony that they didn’t intend the *851 33 acre naked ownership interest to be included in the act is accepted by us. But to reach his result the trial judge had to disbelieve the testimony of defendant W. Richard White and his Notary brother, William John White, that the inclusion of the interest was intended. Plaintiffs cannot prevail if the trial judge concluded or if we were to conclude that defendants knew about the inclusion at the time of the sale and took advantage of it. Fraud is not the issue here. The issue is whether or not defendants made a mistake at the sale and later at trial lied when they testified that they made no mistake.
The testimony of defendants Kaufman and Whittington was valueless as they admitted that they had no knowledge of exactly how much property they were acquiring and that they were relying exclusively on defendant W. Richard White with respect to the transaction.
Defendant White testified unequivocally that he intended to purchase all of the property, including the 33 acres subject to the usufruct, that both mortgages were in default and that it was his intention to take title to all of the property which was subject to the mortgage. Corroborative of his testimony was a letter he wrote to his brother the Notary, William John White, on June 6, 1966, in anticipation of the sale:
“Dear Bill:
“On April 11, 1963 you passed an act of mortgage for Mildred Rojas, wife of, and Eddie Collins in the amount of $12,000.00, covering on their property located in the Parishes of Jefferson and Plaquemine, more fully described in your act of mortgage.
“On October 16, 1964 you passed an act of mortgage in the amount of $15,000.00 covering on the property of Mildred Rojas, wife of, and Eddie Collins, more fully described in this act of mortgage.
“Will you please prepare at your early convenience, not later than July 1, 1966, an act of sale wherein Mr. and Mrs. Collins sell all of their right, title and interest, including minerals, in all of the property that they now own in the Rojas Tract, both in Jefferson and Plaquemine Parishes, the consideration being $33,-280.00, the purchaser to be W. Richard White, et ais. I will notify you before July 1, 1966 who the other purchasers will be.” (Our emphasis)
Defendant’s testimony was further corroborated by that of his brother. He testified that he drew the act of sale in accordance with a request from his brother and that he knew plaintiffs before the transaction. In answer to the question o'f whether he explained to Mr. and Mrs. Collins as to what they were selling he said: “I explained to them definitely that this was all of their interests in those two tracts in Jefferson Parish and Plaquemines Parish. It was well understood that way and that was the reason why they asked for this other letter or asked for permission to trap it and it was my thought to get that letter from the purchasers authorizing them to trap this property. Actually, I told them that at a time .later when Mr. Collins came in and said something about him not selling it all, and I said, I explained to you that you sold it all. We talked about it and I showed him and we discussed it. I knew Mr. Collins wasn’t well educated and I made sure he knew about it. He knew he was selling all of the property.”
The trial judge seemingly attached much significance to the mathematical equivalent between the price of the property, $33,280, and the number of acres without the 33 acres, i. e., 208 times the price of $160, but we do not find this to be persuasive. Defendant White testified that he was aware of the ramifications of a usufruct and had declined to buy the property once before because it was so burdened. According to White, when the first mortgage had become delinquent and the time came for the second mortgage he decided that he should have some additional security and for that reason *852 included the naked ownership of the 33 acre interest,[2] but he made it clear that he did not attach the same value to that 33 acre interest as he. did to the 208 acre interest.
In any event, it seems equally clear from the testimony of defendant as well as Notary White that it was White’s intention to purchase all of the property subject to both mortgages, which unquestionably included the 33 acre interest at the time of the sale. By reference to the excerpt above from the description in the second act of the mortgage it can be seen that there was not only the reference to the acquisition by the act of compromise (which is emphasized above) but there was the specific recitation that the mortgage includes “that interest of which Verice Curol has the usufruct . . .”
While it may be that the omission of this specific recitation from the sale demonstrates that it was not purchasers’ intention to acquire the interest, there are too many factors which must be overlooked to arrive at this conclusion. Did White make a mistake by including the naked ownership interest in the second mortgage? The language is so specific that we cannot assume this to be so. Holding a delinquent mortgage on the naked ownership interest, why would he exclude this from a sale designed to satisfy the mortgage? What about the letter making specific reference to the second act of mortgage and instructng his brother to include all of plaintiffs’ interest written at an unsuspicious time? Can we believe that this letter was not written at the time but perhaps manufactured at a later date? There is no one scintilla of evidence to support such a serious charge. Yet if the letter is accepted at face value it was either a part of a scheme to acquire the interest without plaintiffs’ knowledge or it clearly precludes any possibility of error. Assuming the first alternative solely for purposes of discussion, plaintiffs lose because fraud is not the cause of action on which their case is based.
The trial judge placed much reliance on Prejeant v. Hero Lands Company, supra, but a reading of that case readily demonstrates its distinction. Hero’s primary defense was that the 3.67 acres was omitted on purpose as the result of some compromise it reached with plaintiffs following their delinquency in payments on a bond for deed contract. Once that defense was rejected the conclusion was inescapable that an error existed in the exclusion since the sale was designed solely to carry out the terms of the original contract which included the 3.67 acres. Whether this evidence was tested by the “clear and convincing” formula of Agurs v. Holt, supra, or the “clear, and the strongest possible, proof” formula of Wilson v. Levy, supra, reformation was indicated in the Prejeant case but the same cannot be said for plaintiffs’ proof in the instant case.
It will serve no useful purpose in this opinion to recite and analyze a multitude of cases where reformation has been ordered because a reading of each will readily reveal the kind of facts needed to support such an action. Examples of such cases are Agurs v. Holt, supra, and Waller v. Colvin, 151 La. 765, 92 So. 328.
Since we have concluded that plaintiffs’ evidence was insufficient as a matter of law to support the judgment appealed from, *853 it is reversed and plaintiffs’ suit is dismissed at their cost.
Reversed and rendered.
MORIAL, J., dissents with written reasons.

. Emphasis added for our later reference herein.

. In fairness to plaintiffs, it may be noted that White is mistaken in implying that the only additional security he got for the second mortgage was the 33 acres. In fact, he also included for the first time the interest (a net 81 acres) inherited from Mrs. Collins’s mother. Other mistakes appearing in the record included the second mortgage’s referring twice to the 33 acres (one reference being added after the original typing) ; the first mortgage’s describing the entire 6400 acre tract, rather than only the mortgagor’s interest acquired from the corporation (as presumably intended) ; and White’s initial testimony that the sale price was not calculated by multiplying 208 acres by $160. But those mistakes do not prevent our conclusion that White always intended to acquire the 33 acres, and its inclusion in the deed was no mistake on his part.