486 So.2d 1124 (1986)
SUCCESSION OF Howard M. JONES, Appellee,
v.
James Monroe JONES, Jr., et al., Appellants.
No. 17692-CA.
Court of Appeal of Louisiana, Second Circuit.
April 2, 1986.
Writ Denied June 6, 1986.
*1125 Michael E. Kramer, Winnsboro, for appellants.
Jones, Tete, Nolen, Hanchey, Swift & Spears by Kenneth R. Spears, Lake Charles, for appellee.
Before MARVIN, FRED W. JONES, Jr. and NORRIS, JJ.
NORRIS, Judge.
This appeal arises from a suit to reform an act of credit sale for immovable property. Plaintiff/seller, the Succession of Howard M. Jones, instituted suit against defendant/buyers, James Monroe Jones, Shirley Jones and Ricky Monroe Jones. From a judgment in favor of plaintiff/seller, defendants appeal asserting only that the trial court erred in concluding that plaintiff carried its burden of proving mutual error. For reasons expressed herein, we affirm.
The property involved in this dispute is two adjacent tracts of land situated in Tensas Parish, Louisiana, along Lake Bruin. The property was owned by the late senator Howard M. Jones and his wife, Louise Jones.[1] The southern tract of land traditionally served as a KOA Campground, contained approximately 9.291 acres, and is referred to throughout the record as the "campground area." The northern tract was primarily used for agricultural purposes, contained approximately 10.663 acres, and is referred to throughout the record as the "agricultural tract" or the "Tensas Land & Mineral Company tract." The senator and his wife had always treated the two tracts as separate pieces of property.
In late 1981, appellant, James Monroe Jones, spoke to Mrs. Louise Jones about purchasing the KOA Campground property. At this time the senator had passed away and the property was being held in *1126 succession. The Gulf National Bank of Lake Charles served as executor.
Negotiations ensued and Louise Jones employed Robert Wood to appraise the campground property. Shortly thereafter, the parties verbally agreed on a purchase price of $200,000 for the campground. It is not clear from the record when, but at some point during the negotiation process, Louise Jones gave the buyers a copy of Mr. Wood's appraisal. In this appraisal, dated September 4, 1981, Wood had correctly appraised only the campground or southern tract at $542,000. However, in securing the legal description and a plat of the property from the courthouse, Wood testified he had erroneously obtained and included in the appraisal a description and plat of the combined tracts.[2] After receiving the appraisal the buyers discovered that the legal description in the appraisal called for the inclusion of both the campground area and the agricultural tract to the north. On March 31, 1982 the buyers executed a buy-sell agreement for the KOA campground area wherein they agreed to purchase the "campground" from the succession of Howard Jones for $200,000. Gulf National Bank as the executor for the succession had prepared the buy-sell agreement and executed it in Lake Charles on April 6, 1982. This buy-sell agreement reproduced the erroneous legal description contained in the appraisal. The buyers remained silent. Then, in late March or early April of 1982, James Monroe Jones and family physically moved in and took over operations at the KOA campground. The campground had previously been operated by an employee of Louise Jones, Maggie Jones.[3] Maggie Jones stayed on with her new employers until May of 1982. On June 1, 1982, the parties executed the act of credit sale. The legal description contained in this act carried over the same legal description as had been contained in the buy-sell agreement.
The buyers continued to live on and operate the campground area. They entered a lease with Mrs. Louise Jones for the improvements located on the northern tract near the lake. They never requested any rent or share of the crop from the northern tract and they maintained two separate ledgers on the two tracts of land. The buyers did not pay any taxes on the northern tract and they did not attempt to insure it. Almost a year later, in March of 1983, the buyers informed Mrs. Louise Jones for the first time that they claimed ownership of the northern tract. Louise Jones disagreed and immediately notified the bank that there had been a mistake in the legal description of the land. The bank initially attempted to remedy the situation by having the buyers execute an act of correction. One of the original buyers, Anita Boyd Jones,[4] complied and signed an act of correction on January 21, 1984, stating that she never intended to buy the northern tract; she deeded it back to the seller. However, the remaining buyers, James Monroe Jones, Shirley Jones and Ricky Monroe Jones refused and the instant litigation followed.
After a trial on the merits, the trial judge found that the plaintiff had carried the burden of proving mutual error and ordered the act of sale to be reformed accordingly. From this judgment defendants appeal alleging as error that the evidence was insufficient to support a finding of mutual error. Appellants derive two issues from this general assignment of error: (1) whether the evidence presented was sufficient to satisfy the burden of proof required of the plaintiff in a reformation action; and (2) whether the trial court's *1127 conclusion that appellant James Monroe Jones was much more knowledgeable regarding the property sold than Louise Jones constitutes a sufficient basis to order a reformation.

DISCUSSION
It is well established that either party to a contract is permitted to correct any error in an instrument purporting to evidence the contract, so as to make it express truly and correctly the intention of the parties, provided that the rights of third parties have not intervened. Wilson v. Levy, 234 La.719, 101 So.2d 214 (1958). This includes the right to correct inaccurate legal descriptions contained in real estate contracts. Freeman v. Williams, 450 So.2d 1030 (La.App.1st Cir.1984), writ not considered 456 So.2d 162 (La.1984); Pipes v. Pipes, 343 So.2d 329 (La.App.2d Cir. 1977), writ denied 345 So.2d 904 (La.1977). As summarized by this court in the case of Custom Financing of Bossier City, Inc. v. Williams, 340 So.2d 649, 650-651 (La. App.2d Cir.1976),
The law respecting reformation of instruments is well settled here and elsewhere, it is an equitable remedy and lies only to correct mistakes or errors in written instruments when such instruments, as written, do not express the true contract of the parties. See Ober v. Williams, 213 La.568, 35 So.2d 219.
The burden is on the party seeking reformation to establish the necessary elements by clear and convincing proof, parol evidence being admissible for this purpose. Agurs v. Holt, 232 La.1026, 95 So.2d 644, (1957); Levy, supra; Custom Finance, supra. The most commonly used ground for reformation is mutual mistake of the parties. Holt, supra. A mutual mistake is a mistake shared by both parties to the instrument at the time of reducing their agreement to writing, and the mistake is mutual if the contract has been written in terms which violate the understanding of both parties; that is, if it appears that both have done what neither intended. The evidence of mutuality must relate to the time of the execution of the instrument and show that the parties then intended to say one thing and by mistake expressed another and different thing. 66 Am.Jur.2d, Reformation, § 23.
As noted in Holt and Williams, supra, a determination of mutual error is mainly a question of fact. Thus, we are bound to grant broad discretion to the trial court's finding and cannot disturb it on appeal unless it is clearly wrong. Aleman v. Lionel F. Favret Co., Inc., 349 So.2d 262 (La.1977); Brents v. Gulf Insurance Co., 465 So.2d 860 (La.App.2d Cir.1985), writ denied 469 So.2d 984 (La.1985).
Appellants essentially contend that there is no mutual error here as it was their specific intention to purchase 19.54 acres or the entirety of both tracts. In support of this position, appellants allege that they relied on the plat and the written legal description accompanying the appraisal in determining what they were buying.
There is no question in this case as to Louise Jones' error. She testified that she only intended to sell the southern tract on which the campground was located and that she never intended to sell the northern tract. Thus, the only remaining question is whether the error was mutual. In other words, was there error on the side of the buyers at the time they executed the act of credit sale?
After a careful review of the record we conclude that the trial court was not manifestly erroneous in finding mutual error and reforming the deed accordingly. First, the record clearly establishes that everyone involved treated the land as two separate tracts. Members of the community viewed the tracts as separate. Louise Jones testified that two separate accounts were always maintained for the properties. An aerial photograph introduced into evidence clearly shows the contrast between the two tracts. The campground area to the south consists of a dirt road, grass, numerous improvements and is bordered on all four sides by trees. The agricultural tract to the north is flat farmland, has few improvements and its borders are open. The *1128 buyers themselves testified that they were familiar with the property, having fished and visited on the property prior to purchase. In fact, James Monroe Jones testified that he "lived on the lake" prior to making an offer on the campground.
The evidence conclusively shows that in the initial negotiations, the buyers were interested only in buying the campground area. The seller was interested in selling only the campground area, and she testified that the buyers knew exactly what they were getting. She also showed them the campground boundary line on several occasions and told them about it every time they talked. Maggie Jones also testified that she pointed out the boundary line to the buyers on several occasions prior to her leaving in May, which would have also been before they purchased the land in June.
Perhaps the strongest and most convincing evidence of mutual error is provided by the testimony of Anita Boyd Jones, the buyer who later signed the act of correction. She testified unequivocally that neither she nor any of the other buyers had ever intended to purchase the agricultural land to the north. She further testified that she and the other buyers, after the sale, verbally leased from the seller for $6,000 per year the improvements on the northern tract. She also testified that at some point prior to signing the final papers her father-in-law, James Monroe Jones, and her husband, Ricky, noticed that the description called for more property than just the campground area and went and measured the land. When they returned, Anita testified that they told her and her mother-in-law not to say anything, because Louise Jones would not sign the deed if she found out the description conveyed more property than she intended to sell. Appellants deny ever making this statement and deny that Louise Jones ever showed them any specific boundary. On cross-examination, both James Monroe Jones and Ricky Jones initially attempted to evade questions about exactly what they intended to purchase. Under continued questioning by counsel and finally intervention by the court, Mr. James Monroe Jones testified that he relied on the plat accompanying the appraisal in determining what he was buying. When directly asked whether Louise Jones showed him a boundary line prior to sale, he testified that he "vaguely remembers something to the remark." He further testified that he knew he was not buying any of the improvements north of the boundary line. Ricky Jones also testified that at the time of the sale he knew improvements north of the boundary line were not included, but that he and his father went and stepped off the footage after they got the appraisal and concluded that the description called for 19.54 acres and included all the improvements. Ricky further admitted that Maggie Jones, the camp manager, showed him and his father the boundary line behind her trailer sometime after they moved onto the property, but before they signed the deed in June of 1982.
While the appellants claim to have intended to purchase the entire 19.54 acres, the trial court concluded otherwise and found the buyers only intended to purchase the campground tract for the agreed consideration. The court further found that James Monroe Jones, the buyer's key negotiator, lacked credibility. The trial judge chose to believe Anita Boyd Jones, the buyer who signed the act of correction. We note that the trial court is in a much better position to evaluate the credibility and veracity of witnesses, Bailey v. Bailey, 448 So.2d 808 (La.App.2d Cir.1984), writ denied 450 So.2d 360 (La.1984), and that its conclusion regarding credibility should not be disturbed absent clear abuse. Wood v. Wood, 440 So.2d 906 (La.App.2d Cir.1983). Finding no such clear abuse in the instant case, we defer to the trial court's broad discretion and uphold its factual finding of mutual error.
Appellants heavily rely on the case of Collins v. Whittington, 322 So.2d 847 (La. App.4th Cir.1975), writ denied 323 So.2d 480 (La.1975), in support of their position. In Collins, the court reversed a trial court's order of reformation on the basis that the evidence did not support a finding *1129 of mutual error. A careful review of that case reveals a key distinction between it and the instant case. In Collins the court found no reason to disbelieve the defendant's testimony that he intended to purchase all of the disputed property. The weight of the evidence in Collins tended to corroborate the defendant's testimony. That is not the case here. The trial court specifically found that buyer James Monroe Jones's testimony lacked credibility. Accordingly, we do not find Collins to be controlling in this situation.
The trial court's decision is further supported by the buyers' conduct subsequent to the execution of the written instruments. As mentioned earlier, they never attempted to collect rent from the farmer on the northern tract; they never paid taxes or secured insurance on it; they even leased the improvements from Mrs. Jones. In sum, they never exercised any acts of possession or ownership over the property until March 1983, almost a year later. As noted by the court in Campbell v. Thomas, 140 So.2d 163 (La.App.3d Cir.1962), evidence as to acts of possession or ownership exercised after completion of sale is in many instances the "best evidence as to the true intent of the parties." Conversely, the lack of any acts of possession or ownership is highly probative of the true intent of the buyers in the instant case.
Even assuming, without so holding, there was no mutual error based on appellant's contention that they intended to buy the entire 19.54 acres, we would still affirm the trial court's order of reformation. Evangeline Refining Company v. Nunez, 153 So.2d 886 (La.App.3d Cir.1963); Price v. Taylor, 139 So.2d 230 (La.App.1st Cir. 1962); and Gross v. Brooks, 130 So.2d 674 (La.App.3d Cir.1961). Here, substantial evidence was adduced at trial without objection which justifies a finding of fraud, misrepresentation, or at the very least, inequitable conduct on the part of appellants. LSA-C.C.P. art. 1154. The evidence, as weighed and interpreted by the trial judge, justifies the conclusion that appellee intended to sell and appellants intended to purchase only the campground tract. Only when the appellants discovered that the legal description referred to more land than seller intended to sell and they intended to buy, did they opt to remain silent and hope to receive a windfall from the error.
The second issue raised by appellant is whether the trial court's conclusion that appellant James Monroe Jones was more knowledgeable constituted a sufficient basis to order a reformation. Considering our finding that the trial court was not manifestly erroneous in finding the evidence as a whole was sufficient to order a reformation, we need not discuss this contention in depth. The trial judge obviously concluded that James M. Jones had discovered the error in the description, knew it was an error, and knew at the time of the passage of the act of sale that the deed described more property than the seller intended to sell and that he and the other buyers intended to purchase. Accordingly, we affirm the trial court's decision granting the reformation and tax the costs of this appeal against appellants.
AFFIRMED.
NOTES
[1] Despite same last names, the original property owners, Howard and Louise Jones, are not related to defendant/buyers.
[2] We note a small discrepancy between the acreage listed in the appraisal plat and description on the one hand and the buy-sell agreement and act of credit sale on the other. The plat and legal description accompanying the appraisal set forth the acreage as 19.954. The act of credit sale and the buy-sell agreement set forth the acreage as 19.54.
[3] Despite her last name, Maggie Jones is not related to either Louise Jones or the defendant/buyers.
[4] Anita Boyd Jones was Ricky Jones' wife when the property was purchased. At the time she signed the act of correction and at the time of trial they were living separate and apart.