292 So.2d 923 (1974)
Robert Taylor NETHKEN, Plaintiff-Appellee,
v.
Nancy Waid NETHKEN, Defendant-Appellant.
No. 9747.
Court of Appeal of Louisiana, First Circuit.
March 18, 1974.
Rehearing Denied April 22, 1974.
Writ Granted May 31, 1974.
Richard C. Cadwallader, Baton Rouge, for appellant.
G. Emitte Core, Baton Rouge, for appellee.
Before LANDRY, ELLIS and PICKETT, JJ.
PICKETT, Judge.
On February 25, 1972, plaintiff-appellee, Robert T. Nethken, obtained a judgment *924 by default of separation a mensa et thoro against the defendant Nancy W. Nethken, based upon a petition alleging cruel treatment and abandonment. The judgment also gave Mr. Nethken custody of the four children born of the marriage, subject to visitation rights.
On March 7, 1973, Mr. Nethken filed a petition for divorce and permanent custody of his children based on living separate and apart for more than one year following the judgment of separation.
Mrs. Nethken answered the petition and contested the validity of the judgment of separation. In the alternative, she prayed for the custody of the two younger children and for an award of permanent alimony and child support. She further contends that the $270.00 per month that her husband was paying since the separation, but has now discontinued, is a binding contractual obligation.
The family court judge rejected all of her claims, giving reasons only for the denial of the claim for alimony. He concluded that the issue of the wife's fault was resolved against her at the time the default judgment was obtained and she was not entitled to relitigate the question. Mrs. Nethken has appealed reurging the same claims.
Her attack on the validity of the default judgment of separation is based upon her alleged mistake or misunderstanding induced by her husband and his attorney. La.C.C.P. art. 2004. She testified that she had two meetings with the attorney prior to the filing of the petition, once alone, and once when her husband was present. They discussed the general nature of the contemplated proceedings and agreed upon the monthly payment of $270.00 for the period of their living separate and apart. They also agreed that the children would live in the house with Mr. Nethken. She said she was assured that she would be notified of any further proceedings and particularly of the time and place of any court hearing. She understood that the attorney was representing only her husband and, although both gentlemen urged her to seek legal counsel, and even suggested an attorney by name, she refused to do so.
Thereafter, the petition was filed and personal service was made on Mrs. Nethken. She was aware of the time delay for filing responsive pleadings. Paragraphs 4, 5 and 6 of the petition read as follows:
4.
"Despite petitioner's efforts to make his wife comfortable and happy, defendant has over a long period of time treated petitioner so cruelly as to render their living together insupportable.
5.
On December 21, 1971, defendant abandoned petitioner by moving out of their home without a lawful cause, and since that date she has constantly refused to live with petitioner.
6.
Because of defendant's abansonment of him, petitioner is entitled to separation from bed and board."
Mrs. Nethken telephoned the attorney and objected to Paragraphs Five and Six and asked that they be deleted. She testified that she was told it would be too expensive to amend the petition, but that these allegations would not be relied upon at a trial. The attorney again urged her to retain counsel, but she did not do so.
The hearing on the confirmation of the default judgment was held without Mrs. Nethken's knowledge or appearance. She did not learn of it until some months later, when she called the office of the Clerk for information. She was upset that she had not been notified of the hearing.
We do not consider the judgment to have been obtained through "fraud or ill practices", within the meaning of La.C.C. P. Article 2004, on these facts. The attorney *925 did not lead Mrs. Nethken to believe that he was acting on her behalf. Rather, he repeatedly suggested that she seek counsel. The assurances that she would be informed of further developments came prior to the filing of the petition. After she was served, she knew the need for responding to the suit. By her own choice, she did nothing further. We do not find that she has presented an excuse for her failure to appear and plead timely. Pryor v. Gions, 188 So.2d 739 (La.App. 2nd Cir. 1966). The family court judge did not abuse his discretion in rejecting this claim. Succession of Trouard, 281 So.2d 863. (La.App. 3rd Cir. 1973).
Although the family court judge concluded the issue of permanent alimony was not properly before the court, the record is substantially based on testimony related to the entire family relationship and interaction both before and after the separation. This evidence was important to the claim both for alimony and also for custody and support. The trial judge, in his written reasons for denying alimony, stated that under our jurisprudence the issue of the wife's fault is finally determined when a judgment of separation based on fault is rendered against her. He remarked as follows:
"However sympathetically inclined to this lady's present plight, this court feels bound by its "interpretation of the above (jurisprudence) and is constrained to say in candor that upon the testimony adduced on the trial of the final divorce, indications are that she would have extreme difficulty in proving herself to be without legal fault at the time of the legal separation such as would justify an award by the court of permanent alimony."
In Rayborn v. Rayborn, 246 So.2d 400, the court held that in a suit for separation based on abandonment under the provisions of LSA-C.C. Article 143 the plaintiff puts the issue of fault before the court regardless of the intention of the parties; and that in an abandonment case no judgment can be rendered in favor of the plaintiff without proving freedom from fault. The court said:
"After requiring this proof, we deem it repugnant to the law to allow the husband to refute the previous judgment when the wife later seeks alimony and fault is again put at issue. The sanction of such a practice renders the abandonment article meaningless and judicially condones misrepresentation of facts presented to the court in the abandonment proceedings."
In Broussard v. Broussard, 275 So.2d 410, the husband obtained a separation decree on grounds of abandonment. The husband filed a suit for a divorce alleging that more than one year had passed since he had obtained a judgment of separation from bed and board. The wife admitted the judicial separation but she alleged that she was without fault and reconvened for alimony. The court held that since the husband had obtained a judgment of separation from bed and board on grounds of abandonment, the wife had been judicially determined to be at fault. In that connection, the court said:
"On the other hand if the husband is awarded the judgment of separation, the wife's fault is judicially determined, as it was incumbent on the husband to prove himself free from fault and that having been proved, she was necessarily at fault in abandoning him. La.C.C. Articles 39, 120, 143; Rayborn v. Rayborn, La.App., 246 So.2d 400, writ refused 258 La. 775, 247 So.2d 868."
In the instant case the wife's fault was necessarily placed at issue under the provisions of LSA-C.C. Article 143, and resolved against her. Since the wife was found to be at fault, she is not entitled to alimony; and we concur in the conclusion of the trial court.
Furthermore we find no merit in the contention that the payment of $270.00 per month to Mrs. Nethken during the period of separation gave rise to a contractual *926 obligation which extends beyond the divorce. In our opinion, Mr. Nethken was simply discharging his legal duty to his wife of support and assistance. La.C.C. Article 119. This obligation ceases upon the dissolution of the marriage by divorce.
The evidence shows that the family relationship had been deteriorating for quite some time. Mrs. Nethken had left the home on previous occasions. When there, she routinely left the house in the morning and returned late at night to minimize the contact with her husband and children, and thus to minimize the continuing air of conflict and contention between them. She was unable to discipline the older children at all and could control the younger children only with rather harsh restraints. There were several instances of physical violence. Taking into consideration all of the evidence we are convinced that the family court did not abuse his discretion in awarding the permanent custody of the four minor children to Mr. Nethken; nor has the necessity for a change thereof been demonstrated.
For the above and foregoing reasons the judgment of the Family Court is affirmed at the costs of the appellant.
Affirmed.