307 So.2d 563 (1975)
Robert Taylor NETHKEN
v.
Nancy Waid NETHKEN.
No. 54832.
Supreme Court of Louisiana.
January 20, 1975.
Rehearing Denied February 21, 1975.
*564 Richard C. Cadwallader, Jonathan C. Harris, Baton Rouge, for defendant-applicant.
G. Emitte Core, Core & Roberts, Baton Rouge, for plaintiff-respondent.
SUMMERS, Justice.
Robert Taylor Nethken filed suit for separation from bed and board on January 27, 1972 against his wife Nancy Waid Nethken. As a ground he alleged cruel treatment and abandonment by the wife. He also prayed for the custody of their four children, all minors at the time. When the wife neither answered nor made an appearance, a judgment was rendered by default on February 16, 1972 decreeing a separation in favor of the husband. The judgment awarded custody of the minor children to the husband.
Alleging that more than one year had elapsed since the judgment of separation, the husband filed suit for final divorce on March 7, 1973. He prayed for the permanent care, custody and control of the minor children born of the marriage.
To this suit the wife filed an answer in which she alleged that the default judgment was obtained through mistake and error and should be annulled. In the alternative, she denied that she was at fault in the separation. She alleged that she was in need and should be awarded alimony for her maintenance. She also alleged that she was entitled to the custody of the two youngest children, a boy eleven and a girl five years of age, and to alimony for their support and maintenance. The judge of the family court before whom this case was tried refused to annul the judgment of separation and denied the wife's claim for alimony and custody of the two younger children. That judgment was affirmed on appeal to the First Circuit. 292 So.2d 923. On the wife's application we granted certiorari. 294 So.2d 832.

I.
Since all questions presented here depend upon the validity of the default judgment of separation, which is said to have been obtained by ill practices, this issue is considered at the outset.
*565 "A final judgment obtained by fraud or ill practices may be annulled. . . ." La.Code of Civ.P. art. 2004. Such a judgment is not an absolute nullity; the nullity must be properly decreed within the time prescribed. The established jurisprudence of this State requires that such grounds be asserted in a direct action and not raised collaterally. Pontchartrain Park Homes, Inc. v. Sewerage and Water Board, 246 La. 893, 168 So.2d 595 (1964); Caldwell v. Caldwell, 164 La. 458, 114 So. 96 (1927); Bruno v. Oviatt, 48 La.Ann. 471, 19 So. 464 (1896).
It is otherwise in the case of a judgment rendered against an unrepresented incompetent, a defendant not served or appearing or against whom a judgment by default has not been taken, or by a court without jurisdiction of the subject matter. As to these judgments, their nullity may be adjudged at any time and may be raised collaterally. They are said to be null ab initio. La.Code Civ.P. art. 2002.
A judgment, although founded on ill practices, must be presumed to have been regularly obtained until the contrary is shown in direct proceedings. By a direct action is meant that the party praying for the nullity of a judgment, before the court which has rendered same, must bring his action by means of a petition; and the adverse party must be cited to appear, as in ordinary suits. La.Code Civ.P. art. 1201, 2001-2006; cf. La.Code Practice art. 610; Garnett v. Ancar, 203 So.2d 812 (La.App. 1967).
A collateral attack, on the other hand, is defined as an attempt to impeach the decree in a proceeding not instituted for the express purpose of annulling it. Brigot v. Brigot, 47 La.Ann. 1304, 17 So. 825 (1895); see also Pontchartrain Park Homes, Inc. v. Sewerage and Water Board, supra.
No principle of law has received greater and more frequent sanction, or is more deeply imbedded in our jurisprudence, than that which forbids a collateral attack on a judgment or order of a competent tribunal, not void on its face ab initio. La.Code Civ.P. arts. 2001-2006; Allen v. Commercial National Bank, 243 La. 840, 147 So.2d 865 (1963); In re Phoenix Building & Homestead Assn., 203 La. 565, 14 So.2d 447 (1943); Folse v. St. Bernard Parish Police Jury, 201 La. 1048, 10 So.2d 892 (1942); State ex rel. Mestayer v. Debaillon, 36 La.Ann. 828 (1884).
Under the foregoing principles this answer of the wife, filed on June 12, 1973, cannot be considered as a proper proceeding to annul the judgment of separation. We hold that asserting this alleged nullity of a separation judgment more than a year after its rendition, by way of an answer in a divorce action, does not comply with the requirement that the nullity be asserted by a direct action. In our judgment such an attack is clearly collateral and impermissible in our laws.
Thus on its own motion the Court takes notice that the wife has no right to demand the nullity of the separation judgment in these proceedings. La.Code Civ.P. art. 927.
Furthermore, no ill practice is present here. The charge is based upon the contention that the wife was misled by the husband and his attorney into not filing an answer or otherwise contesting the separation suit. To support this charge she asserts that they told her that she would be notified of the hearing date and that they failed to do so. This contention is untenable for several reasons. The wife was properly served with citation and notice to appear and answer. In addition, after she was served and before the judgment was rendered, she was advised by counsel for the husband to retain counsel of her choice in the matter. Both the husband and his attorney denied that they misled the wife in any way. Only the wife's testimony supports her position.
*566 Our appreciation of the record leads us to believe that the wife's failure to resist the separation suit was motivated by religious considerations and her hope of reconciliation. For these reasons she assumed a passive attitude, not wishing to widen the breach in the marital relationship which would result from what she termed a "hassle". And, although the record contains a complete history of the marital relations preceding the suit for separation, beginning with the marriage itself, it does not satisfy the Court that the wife could have successfully resisted the suit.

II.
Having found the judgment of separation to be immune from collateral attack, it is necessary to consider the issue of the alternative claim of the wife for alimony after divorce on the ground that she has not sufficient means for her support. To succeed with this proposition the wife must demonstrate that she "has not been at fault." La. Civil Code art. 160.[1] The question has recently been resolved in Frederic v. Frederic, 302 So.2d 903 (La.1974) and Fulmer v. Fulmer, 301 So.2d 622 (La. 1974). In those cases the holding was that determination of marital "fault" in the separation proceedings on the grounds of abandonment bars relitigation of the "fault" issue for purposes of an award of alimony following the final divorce on the ground of no reconciliation.
In the instant case, when the husband obtained the judgment of separation from bed and board against his wife on the ground of abandonment and cruel treatment, the judgment carried the implication that the wife, and not the husband, was at fault in the separation. The granting of the final judgment of divorce thereafter in favor of the husband, on the ground that no reconciliation had taken place as provided by Section 302 of Title 9 of the Revised Statutes, does not depend upon any question of fault on the part of either spouse. Such a divorce decree is founded entirely upon the absolute right of either spouse to obtain the divorce on the proof merely that there has been no reconciliation during the probation period allowed by the statute. In fact, insofar as the divorce decree is concerned, in such a case, only evidence bearing upon the question of reconciliation is relevant. August v. Blache, 200 La. 1029, 9 So.2d 402 (1942).
Therefore, since the wife's fault is established by the separation decree, the issue of fault can not be relitigated in the divorce action, and by the plain terms of Article 160 of the Civil Code the wife cannot assert a claim for alimony after divorce. And this result follows notwithstanding the fact that she has no means for her support.

III.
This brings us to the most difficult decision the Court must face: to whom should the custody of the two youngest children be awarded.
The record makes clear that the wife has no means for her support. After the separation, and before divorce, the husband paid the wife $270 each month and furnished *567 an automobile for her use. Although she had worked prior to the marriage as a registered social worker in the State of Virginia, she made no attempt during the separation to engage in any gainful occupation. Prior to the separation she worked as a substitute teacher, refusing to take pay because she did not feel that she should help in the home in a financial manner. Even after the separation she worked as a substitute teacher and as a church librarian, refusing in both cases to accept pay.
The wife is not a good housekeeper. Testimony also establishes that she has, at times, adopted highly emotional and irrational methods of disciplining her children. These consist of such incidents as choking her oldest daughter, spanking the youngest (then less than three years of age) until blood blisters resulted, often spanking the boy until her wrist was sprained from the violence of the effort, and punishing the youngest by confining her to a closed automobile in the heat of summer.
On several occasions, believing that her husband was undermining her authority in the home by his lenient attitude toward the children, she left the family home. At times these absences were frequent, the wife leaving early in the morning and not returning until late at night. At other times she remained away for several days without informing her husband of her whereabouts. On one occasion she went to Salt Lake City, Utah, from their home in Baton Rouge, making it necessary for the husband to go for her.
In summary it may be said that the wife's conduct has lacked the demeanor and stability conducive to the tranquility and security best suited to the upbringing of a boy eleven and a girl of five. The home atmosphere while she was there could be characterized as contentious, disorganized and disorderly.
By contrast the husband has maintained the family home, which he owns, in an atmosphere of order and contentment since her departure. His elderly mother has come to live with him and supervises and cares for the children during his absence. In the limited time her attendance at LSU permits, one of the older daughters has assumed some of the household responsibility, assisting in the guidance and counseling of the younger children. The husband is at home regularly after working hours. He has pursued his profession as an assistant professor of engineering at Louisiana State University. In addition, he has undertaken to supplement his income by investments in rental properties and by an affiliation with a consultation firm.
Awarding custody of children is governed by well-settled principles most recently expressed in Abreo v. Abreo, 281 So.2d 695 (La.1973). See also Estes v. Estes, 261 La. 20, 258 So.2d 857 (1972) and Fulco v. Fulco, 259 La. 1122, 254 So.2d 603 (1971). They are stated again as follows:
"Universal and fundamental principles of the law support the proposition that the paramount consideration in custody cases is always the welfare of the child.
"In keeping with the law's aim to promote the child's welfare, the decisions have recognized that the child's best interest is served when custody is awarded to the mother, especially when the child is of tender years. Based upon this premise, the mother's right to custody is paramount. Thus custody should not be denied the mother unless she is morally unfit or otherwise unstable, and then only when the immorality or instability is such that these characteristics and her conduct adversely affect the child. It is only in exceptional cases that the child's best interest is served by changing custody from the mother to the father.
"When the trial judge has made a considered adjudication of permanent custody based upon these principles, even though such custody is subject to modification at any time when a change of conditions demands it, the party seeking the change bears a heavy burden of *568 clearly proving that the continuation of the existing custody so adversely affects the child that the child's removal is justified.
"Upon appellate review, the determination of the trial judge in child custody matters is entitled to great weight, and his findings will not be disturbed in the absence of a clear showing of error. See also Fulco v. Fulco, 259 La. 1122, 254 So.2d 603 (1971), and the cases cited therein." 281 So.2d at 697.
As the foregoing authority makes clear, the mother's right is generally preferred but the essential consideration is to be given to the children's welfare and best interest. Ard v. Ard, 210 La. 869, 28 So.2d 461 (1946).
There is another rule of law and reason which we deem applicable to the case at bar. It involves the importance of the solidarity of the family unit and the reluctance courts have expressed over separating children of a family. Tiffee v. Tiffee, 254 La. 381, 223 So.2d 840 (1969).
Notwithstanding the wife's paramount right over the husband to the custody of the young children, this right must give way to still another more paramount right the best interest of the children themselves. In this case we believe the interest of the two younger children will be best served by awarding their permanent care, custody and control to the husband with liberal rights of visitation in the wife.
The wife's failure to make any effort to engage in a gainful occupation, and the unfortunate circumstance that results in a denial of alimony to her, make her ability to maintain and support herself questionable indeed. If she had custody of the children, funds intended for their support, education and maintenance would, of necessity, need to be diverted to the wife's maintenance.
The record satisfies us, moreover, that the atmosphere of the home the husband is maintaining would be more conducive to the health, happiness and general best interest of the children, living as they are with one another. Custody in the mother would result in separating the children. The prospective life style with the mother, in addition to this separation, is clouded in obscurity and uncertainty. She has proposed no plan for a future abode, how the children will be cared for if she works, which she surely must, or any other feasible projection upon which the Court can evaluate the conditions under which the children would live.
For the reasons assigned, the judgments of the Family Court and Court of Appeal are affirmed.
DIXON, J., concurs with reasons.
BARHAM, J., dissents with reasons.
DIXON, Justice (concurring).
I respectfully concur.
I agree that custody should be awarded to the father, not because a comparison of the mother's and father's households shows the father's to be of better quality, but because the mother forfeited her right to custody by abusing her children, in the name of discipline.
BARHAM, Justice (dissenting).
I respectfully dissent on the basis of the majority's disposition of the issue numbered "I" in the majority opinion. I cannot agree with the majority's determination that the wife's answer attacking the validity of the default separation judgment was a collateral attack, and therefore not allowable.
The wife's answer to the petition for divorce and custody was that the basis of the divorce, the separation judgment against her by default, was obtained by mistake. Her answer may have been somewhat inarticulately framed, but she essentially represents *569 that there is no basis for a divorce judgment because the separation judgment was invalid. She is alleging fraud on the part of the husband in obtaining the separation judgment. In my opinion, her answer constitutes a direct attack on the separation judgment, rather than a collateral attack, as the majority characterizes it.
I believe that the issue can be analogized to a case in which redhibition is urged as a defense to an action for payment of the purchase price, although the prescriptive period for a suit in redhibition has passed. It is permissible to use redhibition as a defense without asserting it by means of a reconventional demand, similar to the course of action the husband in the case before us asserts the wife must take.
A collateral attack is only possible in a suit for another purpose. In the case at hand, the very basis of the suit for divorce and custody is the validity of the prior separation judgment. Therefore, an attack upon that judgment by way of an answer can only be seen as direct, not collateral. In my opinion the case should have been reversed and remanded to the trial court for a hearing to determine whether or not the separation judgment was valid.
For these reasons, I respectfully dissent.

ON APPLICATION FOR REHEARING
PER CURIAM.
Since we have found that in fact the husband did not procure the judgment of separation by any ill practice, we prefer to rest our holding upon this factual finding. We expressly do not adopt as our rationale the remainder of the reasons assigned by Part I of our original opinion.
With this amendment of our reasons for our conclusion, we deny the application for rehearing, since all other contentions have been correctly decided in our original decision.
SUMMER, J., adheres to the opinion as originally filed.
NOTES
[1] La. Civil Code art. 160 provides:

"When the wife has not been at fault, and she has not sufficient means for her support, the court may allow her, out of the property and earnings of the husband, alimony which shall not exceed one-third of his income when:
"1. The wife obtains a divorce;
"2. The husband obtains a divorce on the ground that he and his wife have been living separate and apart, or on the ground that there has been no reconciliation between the spouses after a judgment of separation from bed and board, for a specified period of time; or
"3. The husband obtained a valid divorce from his wife in a court of another state or country which had no jurisdiction over her person.
"This alimony shall be revoked if it becomes unnecessary, and terminates if the wife remarries."