440 So.2d 906 (1983)
William N. WOOD, Plaintiff-Appellant,
v.
Kasemsri P. WOOD, Defendant-Appellee.
No. 15706-CA.
Court of Appeal of Louisiana, Second Circuit.
October 24, 1983.
*907 John S. Odom, Jr., Shreveport, for plaintiff-appellant.
James B. Wells & Associates, P.C. by J.B. Wells, Bossier City, for defendant-appellee.
Before HALL, FRED W. JONES, Jr. and NORRIS, JJ.
FRED W. JONES, Jr., Judge.
William Wood obtained by default a judgment of separation from his wife, Kasemsri Wood, with the latter receiving custody of the children and child support. A few weeks thereafter Mrs. Wood sued her husband for a legal separation and, in connection therewith, filed a rule directing him to show cause why the default judgment rendered in his favor should not be set aside because of fraud and misrepresentation.
Wood filed an answer to the rule and trial was had thereon. Judgment was subsequently rendered setting aside the above *908 described default judgment. Mrs. Wood was also granted incidental relief, including alimony pendente lite.
Defendant-in-rule Wood appealed the judgment, contending the trial judge erred in:
(1) Allowing a collateral attack, by summary proceeding, against a final judgment and in failing to notice on his own motion that plaintiff-in-rule had no right of action and stated no cause of action.
(2) Setting aside the default judgment even though the evidence failed to establish fraud or ill practices on the part of Wood in obtaining the judgment.
Appellant also filed in this court exceptions of no cause of action and no right of action.
Finding no manifest error in the trial judge's fact-finding and that he correctly applied the law to those facts, for the reasons hereinafter explained, we affirm.
Procedural and Factual Context
William Wood, a member of the U.S. Air Force, married Kasemsri Wood in 1971 in the bride's native country of Thailand. The couple had two children.
On November 2, 1982, while stationed at an air base in Bossier Parish, Wood sued his wife for a legal separation on the ground of cruel treatment. A hearing on the incidental rule to show cause why certain preliminary injunctions should not issue was fixed for December 7, 1982. Personal service was made on the defendant on November 8, 1982.
No response to the pleadings was filed. A preliminary default was entered on November 24, 1982 and a judgment confirming the default, awarding Wood a legal separation, was rendered on December 1, 1982.
On January 13, 1983, Mrs. Wood filed in the same proceeding a "petition in rule to set aside judgment and for separation from bed and board, child custody, child support and alimony pendente lite." Wood was ordered to show cause on January 25, 1983 why relief requested in the rule, including annulment of the default judgment, should not be granted. As noted above, Wood filed an answer to the rule. Trial of the rule was had on January 25, 1983.
Mrs. Wood testified that, upon receiving personal service of the separation suit, she contacted the legal office at Barksdale Air Force Base and was furnished the names of three local attorneys. She later asked assistance from the Caddo Parish Legal Aid office but the request was denied because of her income as a waitress. Thereafter Mrs. Wood discussed her case with a private attorney who quoted her a fee of $750. She did not retain him.
According to Mrs. Wood, after moving out of the matrimonial domicile and filing the separation suit, Wood regularly returned to visit her and the children and slept with her on several occasions, the last of which was the night of December 15, 1982. She insisted that, during this period, her husband advised her repeatedly that he had "dropped" the separation suit, that it was unnecessary for her to retain an attorney, and that she would not have to go to court.
Wood admitted visiting his wife and children frequently after instituting the proceedings for a legal separation, but explained that this was primarily to stay with his 10 and 13 year old boys while the mother was absent. Although categorically denying ever telling his wife that the separation suit had been dismissed, Wood conceded having advised her that her attendance at the December 7, 1982 rule hearing was unnecessary since she already had child custody and would receive an award for child support.
Ruling of Trial Judge
In written reasons for judgment, after reviewing the trial testimony, the trial judge stated:
"The Court believes that the action taken by Mr. Wood following his withdrawal from the family home in discussing the case with his wife on many occasions and telling her that he would see that she got the children and sum of $300 *909 per month child support, led Mrs. Wood to believe that her rights would be fully protected if she did not retain counsel. The Court accepts Mrs. Wood's testimony to the effect that her husband advised her on more than one occasion that she did not need a lawyer. The Court holds that Mr. Wood's conduct is an "ill practice" under Article 2004 of the Code of Civil Procedure."
Applicable Law
A final judgment obtained by fraud or ill practices may be annulled provided the plaintiff brings suit within one year of the discovery of the ground for action. La. C.C.P. Article 2004. Since this is a relative rather than an absolute nullity, basis for the attack upon the judgment must be asserted in a direct action and may not be raised collaterally. Nethken v. Nethken, 307 So.2d 563 (La.1975).
In the Nethken case a husband had obtained by default a separation from his wife. After lapse of the required delays he sued the wife for a divorce. She answered the latter, asking for annulment of the prior default judgment because it was secured through mistake and error. On its own motion the state supreme court noted that the wife had "no right" to demand the nullity in what the majority characterized as a collateral attack. However, the court proceeded to find on the merits that the husband had not engaged in ill practices. Justice Barham dissented, pointing out that the wife's attack upon the default judgment was direct rather than collateral. In a brief per curiam opinion rendered in connection with an application for rehearing, the court stated that "since we have found that in fact the husband did not procure the judgment of separation by any ill practice, we prefer to rest our holding upon this factual finding." It then expressly declined to adopt as its rationale the prior allusions to "no right" of action because of a collateral rather than direct attack upon the judgment.
A collateral attack upon a judgment has been defined as "an attempt to impeach the decree in a proceeding not instituted for the express purpose of annulling it." See Nethken, supra, p. 565. In her petition for a rule to set aside the default judgment, Mrs. Wood alleged certain misrepresentations on the part of her husband concerning the dismissal of his suit and asked that the judgment be set aside. Although Mrs. Wood has combined this action with a suit for a legal separation, annulment of the default judgment was a predicate to success in the separation action. Consequently, we construe hers as a direct rather than a collateral attack upon the default judgment.
We agree with the appellant that use of a summary proceeding to attack the default judgment was improper. However, appellant failed to raise this issue by interposing an exception in the trial court.
An objection to unauthorized use of summary proceeding is a dilatory exception which must be pleaded prior to answer or is deemed waived. La.C.C.P. Articles 926, 928. Levy v. Billeaud, 399 So.2d 775 (La. App. 3rd Cir.1981); Casey v. Casey, 397 So.2d 832 (La.App. 4th Cir.1981).
In re Lomm, 195 So.2d 416 (La.App. 4th Cir.1967) involved an appeal taken by the curator of an interdict from a judgment on a rule awarding an attorney fee. Appellant filed an exception labeled "no cause or right of action" in the appellate court, seeking dismissal of the rule because of improper use of summary proceeding. Disposing of this contention, the court stated:
"It is true, as appellant contends, that summary proceeding (by rule to show cause) cannot be used to fix and recover attorney's fees; an attorney is required to bring ordinary process for that purpose. (citations omitted) However, under LSA-C.C.P. Arts. 926, 928 and 2593 the objection to the unauthorized use of summary proceeding is a dilatory exception which must be pleaded prior to answer or judgment by default and such an exception to a rule to show cause must be filed prior to the time assigned for trial of the rule. Here appellant made no *910 objection to the form of proceeding in the trial court. His first and only objection thereto is contained in the exception he filed in this court. That exception seeks dismissal of the rule solely on the ground that attorney's fees cannot be collected in a summary proceeding. Clearly this is not, as labeled, either of the peremptory exceptions of no right or no cause of action; it is the dilatory exception to the unauthorized use of summary proceeding which cannot be initially filed in the appellate court. By failing to timely file the exception in the trial court appellant has waived his right to object to the improper summary proceeding." (p. 418)
Also see Chauvin v. Nelkin Ins. Agency, Inc., 345 So.2d 132, 133 (La.App. 1st Cir. 1977).
For these reasons, we conclude that appellant Wood waived any objection to his wife's improper use of summary proceeding to attack the default judgment by failing to raise this objection in the trial court through timely filing a dilatory exception.
Appellant argues, however, that his exception of no cause of action and no right of action filed in this court should be sustained. As to the first, by alleging significant misrepresentations of fact on the part of her husband which, if proven, would entitle her to annulment of the default judgment, Mrs. Wood clearly stated a cause of action.
With reference to the exception of no right of action based upon the assertion that this is a collateral attack upon a final judgment by use of a summary proceeding, we conclude (as did the court in the Lomm case, supra) that this is simply a mislabeling of the dilatory exception of unauthorized use of summary proceeding, which we dealt with above. Obviously, the remedy afforded by law in this case [annulment of the default judgment] may be invoked by this particular plaintiff. Consequently, she has a right of action. Nethken, in light of the clarification of the original opinion on the rehearing application, does not support appellant's position. To the extent that cases from other circuits may impliedly buttress his argument, we do not elect to follow them. Therefore, we overrule the exceptions filed by appellant in this court.
Finally, the appellant argues that Mrs. Wood did not prove by the required preponderance of the evidence that her husband obtained the default judgment as a result of fraud or ill practices.
Our state supreme court, in Johnson v. Jones-Journet, 320 So.2d 533 (La.1975), construing La.C.C.P. Article 2004, explained:
"Article 2004 is drawn primarily from article 607 of the Code of Practice, which, in addition to announcing the general rule that judgments obtained by fraud or ill practices were subject to annulment, set forth as illustrations bribery of the judge or witnesses, production of forged documents, and perjury by the party obtaining the judgment. These illustrations were not considered exhaustive of actionable fraud or ill practice, however; the jurisprudence set forth two criteria to determine whether a judgment had, in fact, been obtained by actionable or ill practices: (1) the circumstances under which the judgment was rendered showed the deprivation of legal rights of the litigant seeking relief, and (2) the enforcement of the judgment would have been unconscionable and inequitable.
"When the Code of Civil Procedure replaced the Code of Practice in 1960, the former rule was retained as article 2004. Although the illustrations were deleted `... there was no intention to change the law.' Hence, the criteria of relief set forth in the jurisprudence still obtains." P. 537.
Further elaborating upon the ramifications of Article 2004, the court in Chauvin v. Nelkin Insurance Agency, Inc., 345 So.2d 132 (La.App. 1st Cir.1977) stated:
"The applicable rule is that fraud which justifies annulment of a judgment is not confined to conduct which is fraudulent in the strict sense of the term. The provisions of LSA-C.C.P. 2004 are not limited to cases of actual fraud or intentional wrongdoing but encompasses those *911 situations wherein judgment is obtained through some improper practice or procedure which operates, even innocently, to deprive the party cast of some legal right, and where enforcement of the judgment would be unconscientious and inequitable. (citation omitted) p. 134
As Chauvin proceeded to observe, each case must be considered "from the viewpoint of its own peculiar circumstances."
In the recent case of Kem Search, Inc. v. Sheffield, 434 So.2d 1067 (La.1983) the court commented:
"The trial court is permitted discretion in deciding when a judgment should be annulled because of fraud or ill practice. (citations omitted) ... several of the most important reasons for deferring to the trial judge's exercise of discretion are: His observation of the witness, his superior opportunity to get `the feel of the case,' (citation omitted) and the impracticability of framing a rule of decision where many disparate factors must be weighed (citation omitted). On occasion, when a problem arises in a context so new and unsettled that the rule-makers do not yet know what factors should shape the result, the case may be a good one to leave to lower court discretion."
Here, the trial judge accepted as credible Mrs. Wood's description of her husband's misrepresentations concerning his dismissal of the separation suit and obviously discounted the husband's denials. We are mandated to accord great weight to this credibility assessment, absent a clear abuse of the trial court's broad discretion, which we do not find. Since these misrepresentations led Mrs. Wood to believe that contesting the separation suit was unnecessary, that she did not need to retain an attorney nor appear in court, she was clearly deprived of a legal right and enforcement of the default judgment would be both unconscionable and inequitable. Therefore, the trial judge correctly found that the default judgment should be set aside because it was obtained through fraud or ill practices.
Decree
For the reasons set forth above, appellant's exceptions of no cause of action and no right of action, filed in this court, are overruled; the judgment of the district court in the summary proceeding is affirmed, at appellant's cost.