755 So.2d 331 (1999)
Paula Fontenot EDWARDS, PlaintiffAppellee,
v.
Billy EDWARDS, Jr., Defendant-Appellant.
No. 99-994.
Court of Appeal of Louisiana, Third Circuit.
December 22, 1999.
*332 Kathy Fontenot Deshotel, Ville Platte, for Paula Fontenot Edwards.
William Mitchell Redd, Lake Charles, for Billy Edwards, Jr.
BEFORE SAUNDERS, WOODARD, and DECUIR, Judges.
WOODARD, Judge.
In this child custody litigation, the Fourteenth Judicial District Court for the Parish of Calcasieu (Court I) awarded Ms. Paula Fontenot Edwards and Mr. Billy Edwards, Jr., joint custody of their infant daughter, Miss Taylor Elizabeth Edwards. It named the Edwards co-domiciliary parents and ordered that, should the Edwards not reach an agreement regarding Taylor's living and schooling arrangements, they shall enter into mediation at least six months before Taylor's admission into Kindergarten. Additionally, it ordered that, should the Edwards disagree on a mediator, they should return to court to have it appoint one.
Shortly thereafter, Ms. Edwards filed a petition for change of custody in the Thirteenth Judicial District Court for the Parish of Evangeline (Court II). Mr. Edwards filed a dilatory exception of prematurity, a peremptory exception of no cause of action, a declinatory exception of improper venue, and a motion for change of venue. Court II denied Mr. Edwards' exceptions. He appeals. Finding that Ms. Edwards improperly collaterally attacked Court I's judgment regarding the requirement of mediation and that Court *333 II abused its discretion in denying Mr. Edwards' motion for a change of venue, we reverse Court II's decision.

FACTS
After Ms. Edwards filed for divorce on July 2, 1997, the Edwards disputed the custody of their minor daughter, Taylor. Court I had entered a divorce judgment on February 23, 1998. Ms. Edwards graduated from McNeese State University on December 13, 1997 and apparently remained in Calcasieu Parish between June of 1998 and January of 1999, after which she moved to Evangeline Parish, where she found employment.
Court I held a custody hearing on June 23, 1998, and on January 20, 1999, it awarded the Edwards joint custody and co-domiciliary care and made visitation dependent on a co-parenting Plan (the Plan). In effect, the Plan alternated Taylor's physical custody in one-week periods, starting every Sunday at 5:00 p.m. It ordered the Edwards to attend four counseling sessions with Dr. Patricia Post to assist them in implementing the Plan. The judgment also provided, in relevant part:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that unless the parties agree on the living and schooling arrangements for the child, the parties shall enter into mediation at least six (6) months prior to the minor child, Taylor Elisabeth Edwards entering kindergarten for mandatory [sic] four (4) sessions. Said mediator to be agreed to by counsel herein.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that all rights are reserved to both parties to come back to Court to try and modify the Co-Parenting Plan as it relates to the locating [sic] where the child will go to school and be domiciled and any other issues that may come up as a result of material changes in circumstances.
Additionally, the co-parenting Plan specified, in pertinent part:
If the parties still disagree on where the child shall live and attend Kindergarten, then six months prior to the minor child entering Kindergarten, the parties shall go to mediation, for a mandatory minimum of four sessions, with the mediator to be agreed upon between the parties and/or their attorneys. If no agreement is reached for a mediator, the parties shall have a Court appoint a mediator for the same.
(Emphasis added.)
The parties did not enter into mediation or have the court appoint a mediator. Instead, on March 4, 1999, Ms. Edwards filed a petition with Court II to make Court I's judgment executory, and, subsequently, filed a motion for change of custody and child support within the same proceeding. On April 7, 1999, Mr. Edwards filed a dilatory exception of prematurity, a peremptory exception of no cause of action, a declinatory exception of improper venue, and a motion for change of venue, all of which Court II denied on May 5, 1999, after a hearing held on April 21, 1999. Mr. Edwards appeals.

LAW

COURT I'S ORDER
Given the unusual facts of this situation, we address Mr. Edwards' assignments of error out of order and begin with the efficacy of Court I's order. Court I ordered the Edwards to enter into mediation, at least six months prior to Taylor's entering Kindergarten, in order to determine Taylor's living and schooling arrangements, unless they could independently reach an agreement. The co-parenting Plan, incorporated into the January 20, 1999 judgment, specified that the court shall appoint a mediator, should the parties not agree to one. The Edwards neither reached an agreement on the issue of custody, nor on a mediator. Instead of going back to court to have it appoint a mediator, as the order required, Ms. Edwards made Court I's judgment *334 executory in Court II, and there, moved for a change of custody. At this proceeding, Court II overruled Mr. Edwards' exception of prematurity, found Court I's mediation order to be against public policy, and decided that it could proceed with Ms. Edwards' motion for change of custody.
In the context of child custody, La. Civ.Code art. 131 provides that "[i]n a proceeding for divorce or thereafter, the Court shall award custody of a child in accordance with the best interest of the child." Although Article 131 grants district courts the general power and duty to adjudicate child custody disputes, La.R.S. 9:332 provides an alternative mechanism for the court to follow, should it find mediation preferable. Specifically, La.R.S. 9:332 A states:
The Court may order the parties to mediate their differences in a custody or visitation proceeding. The mediator may be agreed upon by the parties or, upon their failure to agree, selected by the court. The court may stay any further determination of custody or visitation for a period not to exceed thirty days from the date of issuance of such an order. The court may order the costs of mediation to be paid in advance by either party or both parties jointly. The court may apportion the costs of the mediation between the parties if agreement is reached on custody or visitation. If mediation concludes without agreement between the parties, the costs of mediation shall be taxed as costs of court. The costs of mediation shall be subject to approval by the court.
(Emphasis added.) Thus, a trial court has discretion to order the parties to mediate and then to stay further proceedings for thirty days from the date it issues such an order. In the instant case, although Court I did not issue a formal stay, its judgment had the effect of staying further determination of custody from January 20, 1999 to six months before Taylor's entering Kindergarten. We take judicial notice of the fact that Kindergarten in Calcasieu Parish starts at around the middle of August of each year; hence, six months before that date places Court I's deadline not to exceed February 22, 1999, in compliance with the statutory time frame.
Further in accordance with the statute, the order specified that "if no agreement is reached for a mediator, the parties shall have a court appoint a mediator for the same." (Emphasis added.)
Although it is well settled that child custody orders are always subject to modification,[1] and, thus, never final, we find that such law relates to issues concerning the merits or substance of the situation. On the contrary, this part of Court I's order dealt solely with procedure in that it specified how the parties were to proceed in order to arrive at the merits. As such, Court I's mediation order constituted a final order, having the effect of res judicata. When a party is not satisfied with a trial court's order, it may either appeal, seek a writ of review, or seek nullity of the judgment for vice of form or substance. The parties neither honored any part of Court I's order, nor appealed its decision, either by devolutive appeal or supervisory writ, and no nullity action was filed. Instead, Ms. Edwards attempted to attack the judgment, collaterally, when she filed a motion for a change of custody with Court II, in flagrant disregard of Court I's order, and asked Court II to disregard Court I's order.
A collateral attack is defined as an attempt to impeach a decree in a proceeding not instituted for the express purpose of annulling it.[2] As the Supreme Court stated in Allen v. Commercial Nat. Bank,[3] *335 "[n]o principle of law has received greater and more frequent sanction, or is more deeply imbedded in our jurisprudence, than that which forbids a collateral attack on a judgment or order of a competent tribunal, not void on its face ab initio." With this in mind, in Price v. Price,[4] we stated that "[a] judgment rendered by a Court of competent jurisdiction imparts absolute verity and has the force of things adjudged, unless and until it is set aside in a direct action of nullity. It cannot be collaterally attacked."
Accordingly, we find that Court II should have denied Ms. Edwards' demand, enforced Court I's judgment, and named a mediator, or transferred the case back to Calcasieu since it was incapable of enforcing the outstanding order. Notwithstanding, Court II compounded the problem with the response it gave to Ms. Edwards' filing. On March 8, 1999, it ordered that Court I's judgment be made executory and given full faith and credit. Yet, at the June 18, 1999 hearing, it found the mediation order to be against public policy and refused to require its implementation. First, apparently, Court II read La.R.S. 9:332 A to be permissive, as applied to it at this stage of the proceedings, and in spite of Court I's outstanding order. Thus, it found that it had the discretion to grant a stay at that point. Second, the decision to discard mediation resulted from Court II's unfamiliarity with the statute and its impression that this statute had never been implemented in Evangeline Parish, which does not make it against public policy.
The terms of La.R.S. 9:332 A allow for a stay of ordinary proceedings, for thirty days from the date of the original order. Court I's judgment did just that when it unequivocally mandated the Edwards to enter into mediation before they could return to court; hence, it preempted the discretion that Court II might otherwise have had on the issue, had the parties come before him first. When Court I made it mandatory for the parties to come back to court to have a mediator appointed, should the parties not agree on one, Court II never had authority to find mediation to be at its discretion.
Additionally, Court II's unfamiliarity with the mediation statute hardly makes Court I's order against public policy. Indeed, Court I's order follows the precepts of La.R.S. 9:332 A. Therefore, after finding that Court I's order should be given full faith and credit, Court II should have done just that; namely, it should have executed the terms of Court I's judgment, and since the parties had failed to agree on a mediator, it should have appointed one.
Therefore, its decision to hear the case on the merits, before having the parties participate in mediation, is reversed.

VENUE
The rule of venue regarding a change of custody proceeding is set forth in La.Code Civ.P. art. 74.2(B), which states, in relevant part:
A proceeding for change of custody may be brought in the parish where the person awarded custody is domiciled or in the parish where the custody decree was rendered.
(Emphasis added.) Nevertheless, in a proceeding dealing with child custody determinations, La.Code Civ.P. art. 74.2(E) provides that for the parties' convenience and in the interest of justice, a court may transfer a custody proceeding to another court of proper venue. We are mindful of the fact that district courts have great discretion when considering a motion for change of venue on the basis of forum non conveniens and when selecting a more convenient venue.[5] But in the instant case, Court II improperly found Court I's judgment to be against public policy. It acknowledged its lack of familiarity with the mediation statute and explained the difficulties that it would encounter in implementing mediation in Evangeline Parish, *336 and it refused to implement a valid outstanding court order. Therefore, in the interest of justice and for the convenience of parties, Court II should have transferred venue to another court of proper venue; namely, Court I, which was prepared to implement the mandate of our Louisiana laws. Accordingly, Court II abused its discretion when it denied Mr. Edwards' motion for a change of venue.
Holding that Court II should have transferred venue to Court I, we find the other issues raised by this appeal are pre-termitted.

CONCLUSION
Court II erred when it disregarded Court I's order and overruled Mr. Edwards' exception of prematurity. In addition, it abused its discretion when it denied Mr. Edwards' exception for a change of venue, as the forum is more convenient in Calcasieu for the parties to satisfy Court I's order. Accordingly, we reverse Court II's decision and remand the case to Court II; we order that Court II transfer this case to Court I forthwith. We assess the costs of this appeal to Ms. Edwards.
REVERSED AND REMANDED, AND ORDERED THAT THE RECORD BE TRANSFERRED TO CALCASIEU PARISH FORTHWITH.
NOTES
[1] Kleiser v. Kleiser, 619 So.2d 178 (La.App. 3 Cir.1993).
[2] Nethken v. Nethken, 307 So.2d 563 (La. 1975).
[3] 243 La. 840, 147 So.2d 865, 868 (1962).
[4] 326 So.2d 545, 548 (La.App. 3 Cir.1976).
[5] See Addington v. McGehee, 29,729 (La.App. 2 Cir. 8/20/97); 698 So.2d 702. See also Labostrie v. Labostrie, 605 So.2d 187 (La. 1992).