STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

05-452

ESTELLE WIGGINS GUNTER RYDER

VERSUS

GLENN EDWARD BELGARD, ET UX.

**********
APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 215,830
HONORABLE F. RAE SWENT, DISTRICT JUDGE
**********

GLENN B. GREMILLION
JUDGE

**********

Court composed of Glenn B. Gremillion, J. David Painter, and James T. Genovese, Judges.

AFFIRMED.

Ricky L. Sooter
3600 Jackson St., Suite 106A
Alexandria,, LA 71303
(318) 767-0366
Counsel for Plaintiff/Appellee:
    Estelle Wiggins Gunter Ryder

Richard E. Lee
810 Main St.
Pineville, LA 71360
(318) 448-1391
Counsel for Defendants/Appellants:
    Glenn Edward Belgard
    Johnna Sue Haynes Belgard

GREMILLION, Judge.

The defendants, Glenn and Johnna Belgard, appeal the judgment of the trial court declaring that the plaintiff, Estelle Wiggins Ryder, is the owner of the property at issue through acquisitive prescription of ten and thirty years. For the following reasons, we affirm.

**FACTS**

The subject 10.97 acres is located in Deville, Rapides Parish, Louisiana. The land is part of Section 11, which consists of 676.98 acres in Township 5 North, Range 2 East, which was granted to Benjamin Miller via a patent from the United States in 1832. The ownership of Section 11 changed hands several times through 1902. In 1904, eighty acres, including the subject acreage, was sold by Elijah Lee to David C. Gunter, who was married to Janie Bonnette Gunter. Five of the eighty acres was then sold by David to James R. Howard in 1906. On January 17, 1914, David sold the south forty acres of the eighty acre tract to his son Avard (Doc) Gunter. The property description of that sale stated:

> Commencing at the South West Corner of Section Eleven (11) being the Benjamin Miller Grant "B" 720 911 Township Five (5) North Range Two (2) East and Thence run N. 20° 50' West Twenty (20) Chains; thence North 69° 10' East Twenty (20) Chains; Thence South 20° 50' East Twenty (20) chains; thence South 69° 10' West 20 chains and being the South half of the land purchased by this Vendor recorded in Conveyance Book "R R" pages 478 from Elizah Lee.

On December 2, 1915, an Act of Exchange was executed between David and Avard, whereby:

> Said David C. Gunter and Avard (Doc) Gunter did decleare that they are desirous of making an Exchange of the two tracts of land above described, the Said Avard Gunter exchanging the South half or forty acres with David C. Gunter for the North half of the 80 acres above

1

described and said affiants did declare that they each to the other do hereby exchange, sell, convey, transfer and set over to the other, the lands now owned by them and above described - the Said David C. Gunter to the Said Avard Gunter, the North half of the Said Eighty acres of land and the Said Avard Gunter to David C. Gunter, the South half of the Said 80 acres and improvements.

Pursuant to this act, David now owned a forty acre tract located in Section ll, Township 5 North, Range 2 East, with the following property description:

Commencing at the South West Corner of the Benjamin Miller Spanish Grant - B- 720 911, in Township Five (5) North Range Two (2) East and thence run North Twenty degrees and fifty-minutes (20° 50' ) West, Twenty (20) chains; thence North Sixty Nine degrees and ten minutes (69° 10') Twenty (20) chains; thence South Twenty degrees and fifty-minutes (20° 50') East Twenty (20) chains; thence South Sixty nine degrees and and (sic) Ten minutes (69° 10'), Twenty chains, and being the South half of the 80 acres of land purchased by David C. Gunter from Elijah Lee recorded in Conveyance book R R page 478- the Sale from D C Gunter to Avard Gunter, being recorded in book 57- page 499 of the records of Rapides Parish Louisiana.

In 1927, subsequent to David's death on September 9, 1920, seven of his children, John, Jake, Jim, Avard, Gene, Hattie, and Mattie sold all of their interests in his succession to their brother, Robert, a bachelor, particularly the following described property:

All of that certain tract of land described as commencing at the South West corner of Section Eleven, being the Benjamin Miller Grant "B" No. 911, in Township Five, North Range Two East, Thence North twenty degrees and fifty minutes West, forty chains, thence North sixty-nine degrees and ten minutes East twenty chains, thence South twenty degrees and fifty minutes East forty chains, and thence South sixty-nine degrees and ten minutes West, twenty chains, to point of beginning, containing the quantity of eighty (80) acres; being the same property described in sale of Ellijah (sic) Lee to D. C. Gunter, in Conveyance Book "RR", page 478, of the Records of Rapides Parish, Louisiana, less that prortion sold by David Gunter to Avard (Doc) Gunter and described as follows: Commencing at the South West corner of Section Eleven, being the Benjamin Miller Grant "B" No. 911, Township Five, North Range Two East, and thence run North twenty degrees fifty minutes West twenty chains; thence run sixty-nine degrees, ten minutes, East,

2

twenty chains, thence South twenty degrees and fifty minutes East twenty chains, thence South sixty-nine degrees and ten minutes West twenty chains, and being the South half of the land purchased by David Gunter in Conveyance Book "RR", page 478, of the records of Rapides Parish, Louisiana.

On December 28, 1933, Robert married Estelle Wiggins at his home located on the subject property, where they thereafter resided. Subsequent to his mother's death on April 17, 1937, Robert again purchased his siblings' interests in David's succession. These five conveyances, executed on June 25, 1942, September 1, 1942, December 29, 1945, December 21, 1946, and November 25, 1949, contained the same property descriptions as in the October 1, 1927 conveyance, pertaining to the eighty acres of property, less and except the forty acres sold by David to Avard.

On July 31, 1948, John B. Hammond sold Robert 2.49 acres of land located in Section 11, Township 5 North, Range 2 East, which was located in the southwest corner of the north forty-acres owned by Avard after the execution of the Act of Exchange with David.

In 1948, Robert commenced selling off portions of the 42.49 acres owned by him. On January 2, 1948, he sold one acre of land to Dwight Belgard, which was located on the east side of the Catahoula Lake Road. On July 6, 1951, he granted a right-of-way easement across his property to the Louisiana Rural Electric Corporation. On November 29, 1952, he sold eighteen acres of property located east of the road to his brother, Carl. On March 30, 1955, he sold one acre located in the southwest corner of his property to Spencer Wiggins. He sold another acre to Shirley Wiggins on May 25, 1957. Robert died on January 24, 1958. Subsequent to his death, Estelle continued selling off portions of the property. On April 13, 1965, she

declared that Robert had executed a right of way in favor of American Louisiana Pipe Line Company, which was recorded in the Rapides Parish Conveyance Book on December 5, 1955. On February 3, 1969, she executed an oil, gas, and mineral lease in favor of Jack T. Everett on thirty-nine acres located in the southwest quarter of the southwest quarter less and except one acre in the form of a square in the southwest corner owned by D. W. Faircloth. On September 18, 1972, she sold one acre to Donald Wayne Faircloth and 2.2 acres to Edward Belgard. On April 27, 1978, Estelle sold one acre to Spencer Wiggins. On February 11, 2003, Estelle donated a servitude of drainage over her remaining 13.29 acres to her niece, Teresa Allen.

On December 23, 2003, Gene Herbert Gunter, Jr. (Gene Herbert), David Gene Gunter's grandson,[1] conveyed all of the rights, interest, and title he might have inherited with regard to 11.191 acres of land to Glenn and Johnna Belgard. This property is part of the 13.29 acres owned by Estelle. Subsequent to their purchase, the Belgards had the property surveyed, culverts set in place, and attempted to post "no trespassing" signs around the perimeter.

Thereafter, Estelle filed a Petition for Declaratory Judgment seeking to have herself declared the owner of the property pursuant to deed acquired from Robert, through ten and thirty years acquisitive. Following a trial on the merits, the trial court took the matter under advisement. Subsequently, in written reasons, it held that Estelle had established her possession of the property and shifted the burden of proof to the Belgards to prove a superior title. Finding the Belgards unable to do so, the trial court declared Estelle the owner of the property pursuant to La.Civ.Code arts.

---

[1] David Gene Gunter was Robert's brother.

3473 and 3488.[2] Judgment was rendered in this matter on January 18, 2005. This appeal by the Belgards followed.

**ISSUES**

On appeal, the Belgards raise five assignments of error. They argue that the trial court committed legal error by shifting the burden of proof from Estelle to them when she failed to satisfy the burden of proof for a possessory action after the trial court held that the subject property was not enclosed on all sides by visible boundaries. They also argue that the trial court erred in finding that she satisfied the requisites for ten years and thirty years acquisitive prescription. Further, they claim that the trial court abused its discretion by not allowing them to file their third amended answer, in response to Estelle's introduction of the probate record of Robert's succession, and its failure to find the judgment of possession in that proceeding null and void ab initio.

After reviewing the record, the judgment, and the pertinent law, we find no error in the trial court's judgment finding that Estelle proved acquisitive prescription of thirty years. While we acknowledge that the Belgards' have raised valid arguments concerning just title and the validity of Robert's testament as pertains to the issue of ten years acquisitive prescription, we need not address those since we find that she satisfied the requirements of thirty years acquisitive prescription. Accordingly, we pretermit all discussion pertaining to those issues, except that concerning the trial court's refusal to declare the probate judgment absolutely null, as discussed below.

---

[2] Although the trial court references La.Civ.Code art. 3488, the relevant code article was La.Civ.Code art. 3486, pertaining to prescription of thirty years.

## THIRTY YEARS ACQUISITIVE PRESCRIPTION

The Belgards argue that the trial court erred in finding that Estelle satisfied the requirements for proving ownership of the property pursuant to thirty years acquisitive prescription.

The following precepts apply to acquisitive prescription. Louisiana Civil Code Article 3486 provides that ownership of an immovable "may be acquired by the prescription of thirty years without the need of just title or possession in good faith." Possession occurs when a possessor takes corporeal possession of an immovable, with the intent to possess as owner. La.Civ.Code art. 3424. "Corporeal possession is the exercise of physical acts of use, detention, or enjoyment over a thing." La.Civ.Code art. 3425. Accordingly, acquisitive prescription is commenced by corporeal possession; however, once this requirement is satisfied, civil possession may follow. La.Civ.Code art. 3476. Most importantly, possession must be continuous, uninterrupted, peaceable, public, and unequivocal. *Id.* A possessor who possesses pursuant to title, constructively possesses an immovable to the extent of his title. Possession in the absence of a title extends only to that area actually possessed. La.Civ.Code arts. 3426 and 3487. The party asserting acquisitive prescription bears the burden of establishing that the codal requirements for proving such have been satisfied. *Phillips v. Fisher*, *writs denied,* 94-0813 (La. 5/6/94), 637 So.2d 1056, 93-928 (La.App. 3 Cir. 3/2/94), 634 So.2d 1305, *writs denied*, 94-0813 (La. 5/6/94), 637 So.2d 1056. Moreover, a trial court's findings with regard to acquisitive prescription are factual in nature and will not be reversed in the absence of manifest error. *Id.*

6

Various witnesses testified with regard to the acts of possession exercised by Estelle over the property at issue. Estelle testified that she married Robert on the property on December 26, 1933, and has lived there ever since. She stated that she lived in the original house located on the property until it burned down and then in the house that replaced it. She stated that the improvements located on the property in 1933 included, in addition to the house, a large two-story hay barn, a chicken house, a shop, and a smoke house. She testified that the property south of the house was used as a pasture land, on which they ran three horses, two mules, and approximately a hundred head of cattle. She stated that she also kept a hundred laying leghorn hens. Additionally, Estelle testified that they grew a vegetable garden, maintained an orchard, and cut wood on the property.

In addition to these physical acts of possession, Estelle also performed civil acts of possession. She executed an oil and gas lease over the property in 1969, she sold portions of the property to Donald Wayne Faircloth and Edward Belgard in 1972, and to Spencer Wiggins in 1978. Furthermore, she donated a servitude of drain in favor of her niece, Teresa Allen, in 2003.

Charles Slay, the former Tax Assessor for Rapides Parish, testified that he began visiting Robert on the property prior to his marriage to Estelle in 1933. At that time, he stated that Robert's original house was located in the northwest corner of his property. He testified that the house burned down in the early 1950's, but that it was replaced by another house slightly to the east of the original site. He recollected that a barn was located on the property, as well as a cattle pen, and that Robert owned a stallion and ran cows there. Slay further testified that Robert always

7

planted a large field of peas behind his house, which they picked during the summer. He stated that he visited Robert and Estelle numerous times on their property.

Travis Gunter, Carl's son, testified that he has known Estelle as long as he can remember and that he stayed with her and Robert in their original house. He stated that in addition to their home, they maintained a log barn and a blacksmith shop on their property. He further testified that they ran cattle and horses on their property in a pasture which was located behind their home, to the west of Gene Gunter Road.

Gene Herbert testified that Estelle has lived on the subject property as far back as he can remember, his date of birth being May 21, 1942. He stated that she and Robert lived in the original house until it burned, and then in the house built to replace it. Until 2003, he testified that he never claimed any interest in Estelle's property, he never physically possessed it, paid taxes on it, ran cattle on it, or fenced it.

Edward Belgard, who purchased 2.2 acres of land from Estelle, testified that he moved onto his property at the time he purchased it on September 18, 1972, and that he has lived there ever since. He stated that Estelle has continuously lived on the property since that date.

Robert's testament was also introduced into evidence. Although executed on March 18, 1953, and filed into the conveyance records of Rapides Parish on November 8, 1955, it was not filed for probate until August 4, 2004. In the testament, Robert bequeathed to Estelle all of his property, including "Forty one & 49/100 (41.49) acres of land in the Southwest corner of Section eleven (11) township

five (5) North Range Two (2) East, less and excepting Eighteen acres of land sold to Carl Gunter as shown in book 443, page 290, with the survey of Irion Lafargue attached." An Order of Probate and Judgment of Possession was rendered on August 4, 2004.

After reviewing the evidence and the law, we find that Estelle commenced possessing as owner the 41.49 acres of land described in Robert's testament, less an additional two acres sold by him prior to his death, on January 24, 1958. Prior to that time, we find that the property was possessed by Robert as his separate property.

By December 2003, when the Belgards' attempted to disturb her possession of the 11.191 acres, Estelle had possessed the 13.29 acres remaining from Robert's property for approximately forty-six years. "One who holds a deed translative of title is presumed to possess to the full extent of his title by any act of possession on his land." *Winjum v. Duplantis*, 393 So.2d 405, 407 (La.App. 1 Cir. 1980) (footnote omitted). As Robert's testament is an act translative of ownership, Estelle constructively possessed the property to the limits of her title by possessing only part of the property. La.Civ.Code art. 3426. Thus, Estelle is not required to prove actual possession of either inch-by-inch possession or possession within enclosures. *Presswood v. Spillman*, 04-145 (La.App. 1 Cir. 2/11/05), 906 So.2d 509, *writ denied*, 05-0672 (La. 5/6/05), 901 So.2d 1098. Moreover, the "title need not be valid in order to support a claim of constructive possession." Yiannopoulos, 2 *Louisiana Civil Law Treatise* § 305, p. 606 (2d Ed. 2001) (citing *Marks v. Collier*, 216 La. 1, 43 So.2d 16 (1949)). Thus, even if Robert's testament is found to be

invalid for its failure to include an attestation clause, it still suffices to support Estelle's claim of constructive possession.

Accordingly, we find that Estelle has proven that she corporeally possessed the 13.29 acres continuously, uninterruptedly, peaceably, publically, and unequivocally for thirty years. The judgment of the trial court is affirmed on this issue.

## PROBATE RECORD

In two assignments of error, the Belgards argue that the trial court erred by refusing to file their third amended answer in response to a judgment of possession obtained by Estelle several days prior to this matter proceeding to trial. They further argue that the trial court erred by not declaring the judgment of possession as null and void ab initio due to the fact that Robert's testament failed to satisfy the requirements for a nuncupative will by public act.

During the hearing, the trial court accepted the Belgards' third amended answer on proffer. In its December 28, 2004 written reasons, the trial court ordered the answer filed into the record, which was done on August 5, 2004. Accordingly, we find no merit in this assignment of error.

With regard to their second assignment, we find that the Belgards are not entitled to attack Robert's will collaterally. In *LeGlue Buick, Inc. v. Smith*, 390 So.2d 262, 264 (La.App. 3 Cir. 1980), we discussed the law pertaining to absolutely null judgments:

> A judgment is an absolute nullity when there exists a vice of form. LSA-C.C.P. Article 2002, supra and the Official Comment to that article. A person with interest may show such nullity in collateral proceedings at any time and before any court, for absolutely null

10

judgments are not subject to the venue and the delay requirements of the action of nullity. *Nethken v. Nethken*, 307 So.2d 563 (La.1975); *Tannehill v. Tannehill*, 226 So.2d 185 (La.App. 3 Cir. 1969), cert. denied [,] 228 So.2d 485 (La.1969); *Garnett v. Ancar*, 203 So.2d 812 (La.App. 4 Cir. 1967); *Franz v. Franz*, 315 So.2d 79 (La.App. 4 Cir. 1975); *American Bank & Trust Company v. Marbane Investments, Inc.*, 337 So.2d 1209 (La.App. 3 Cir. 1976). A collateral attack is defined as an attempt to impeach the decree in a proceeding not instituted for the express purpose of annulling it. *Nethken v. Nethken*, supra.

On the other hand, "a final judgment obtained by fraud or ill practices may be annulled ...". LSA-C.C.P. Article 2004. Such a judgment is not an absolute nullity; the nullity must be properly decreed within the time prescribed. The established jurisprudence of this State requires that such grounds be asserted in a direct action and not raised collaterally. *Nethken v. Nethken*, supra; *Pontchartrain Park Homes, Inc. v. Sewerage and Water Board of New Orleans*, 168 So.2d 595 (La.1964). What is meant by a "direct action" is that the party praying for the nullity of a judgment must bring his action by means of a petition; and the adverse party must be cited to appear, as in ordinary suits. LSA-C.C.P. Article 1201, 2001-2006; *Nethken v. Nethken*, supra; *Garnett v. Ancar*, supra.

We find that the appellants' attack on the trial court judgment in this case must be considered a collateral attack. The petition for nullity was filed in the record of an ongoing proceeding, and sought to be made a part of these proceedings. The only judgments which may be collaterally attacked are those which are absolutely null because of a vice of form as provided in LSA-C.C.P. Article 2002.

LSA-C.C.P. Articles 2001-2006 provide the grounds for an action of nullity. These are the exclusive grounds for nullity of judgment. *Southern Wheel & Rim Service, Inc. v. Champion Machine Works, Inc.*, 283 So.2d 328 (La.App. 4 Cir. 1973); *C. I. T. Leasing Corporation v. Bar-Tender of Louisiana, Inc.*, 258 So.2d 228 (La.App. 4 Cir. 1972). Therefore, the facts alleged in the petition must show entitlement to annulment based solely on these grounds. An action for nullity cannot be substituted for a timely appeal. *C. I. T. Leasing Corporation v. Bar-Tender of Louisiana, Inc.*, supra; *Levy v. Stelly*, 254 So.2d 665 (La.App. 4 Cir. 1971), cert. denied, 256 So.2d 289 (La.1972); *Succession of Quaglino*, 248 So.2d 380 (La.App. 4 Cir. 1971), writ refused, 252 So.2d 455 (La.1971).

In this instance, the judgment of possession is not absolutely null as it fails to satisfy any of the grounds set forth in La.Code Civ.P. art. 2002. Thus, a

collateral attack by the Belgards fails. Furthermore, La.Code Civ.P. art. 2931 provides that "[a] probated testament may be annulled only by a direct action brought in the succession proceeding against the legatees, the residuary heir, if any, and the executor, if he has not been discharged. The action shall be tried as a summary proceeding." Accordingly, there was no error in the trial court's failure to declare the judgment of possession absolutely null.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed. The costs of this appeal are assessed to the defendants-appellants, Edward and Johnna Belgard.

**AFFIRMED.**